837 F.2d 806
 Richard John FREITAS, Sr., Appellant,
v.
Warden Calvin AUGER; Deputy Director for Institutions Paul
Grossheim; Director of Dept. of Corrections Hal Farrier;
Correctional Security Manager G.A. Winders; and Adjustment
Committee Members Barrens, Bermeyer and Thomas, Appellees.
 No. 87-1597.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 1, 1987.
Decided Jan. 26, 1988.
Rehearing Denied March 7, 1988.
 
 Philip Mears, Iowa City, Iowa, (appointed), for appellant.
 Layne M. Lindebak, Des Moines, Iowa, for appellees.
 Before HEANEY, BOWMAN and WOLLMAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 A prison disciplinary committee at the Iowa State Men's Reformatory punished Richard J. Freitas for allegedly conspiring with other inmates in planning an escape. Freitas brought an action before a magistrate[1] under 42 U.S.C. Sec. 1983 against various prison and state officials, contending that they had violated his constitutional rights. After a hearing, the magistrate held against Freitas. We affirm.
 
 I. FACTS
 
 2
 Freitas is a prisoner at the Iowa State Men's Reformatory in Anamosa, Iowa. Gary A. Winders, the Correctional Security Officer placed Freitas in administrative segregation on October 28, 1985. On October 29, Winders told Freitas he was under investigation for conspiring to escape from the Reformatory. Freitas admitted that two other inmates had discussed with him a plan to escape through the "hobbycraft" area of the Reformatory. Freitas, however, denied that he either initiated or furthered these conversations. The State concedes that Freitas did nothing more than participate in these conversations.
 
 
 3
 On October 31, 1985, Freitas and Winders talked again. Freitas revealed more about the conversations but again denied any involvement in the escape plan. Freitas consented to a polygraph examination on certain issues.
 
 
 4
 On November 5, 1985, a polygraph examination was administered. The examiner asked Freitas whether he intended to escape through the hobbycraft area, whether he would kill a guard to further an escape, whether he knew of another prisoner who would kill a guard to further an escape, and whether he knew of any hacksaw blades which might have been smuggled into the reformatory to further an escape. The examiner told Freitas and Winders that Freitas had truthfully answered "no" to each question. He also said that Freitas had no "deliberate conscious plan" to escape through the hobbycraft area.
 
 
 5
 On November 8, Freitas was charged with a major disciplinary violation of conspiring to escape. Under the Reformatory rules, an inmate can act in complicity to escape "if, with the intent that an offense be committed, [he] commands, induces, procures, or aids another to commit it." At a hearing on November 12 before the Adjustment Committee (consisting of appellees Brimeyer, Behrends,[2] and Thomas), Freitas denied the charges. Winders offered a memorandum concerning the polygraph results and two confidential statements of informants.[3]
 
 
 6
 Based on this evidence, the Committee found Freitas guilty of conspiring to escape. The Committee punished Freitas with ten days in solitary confinement and a minimum of thirty days in administrative segregation. He also was removed from the honor roll and lost forty-five days of good time.
 
 
 7
 On appeal, the warden, Calvin Auger, determined that a new hearing was necessary for submission of the typed results of the polygraph examination. Because of a lengthy delay in the preparation of the typed results--Freitas was in administrative segregation during this time--Freitas decided to proceed with the hearing without the typed results.[4] At the hearing on December 24, 1985, Freitas told the Committee in some detail about the conversations with the other inmates. He reiterated that he had in no way furthered these conversations or conspired to escape.
 
 
 8
 Winders explained, not under oath, the polygraph results. The Committee concluded that, while Freitas had answered the questions truthfully, the questions did not address whether Freitas acted in complicity with others in planning an escape.
 
 
 9
 The Committee again found Freitas guilty of the charge and imposed the same punishment as before. The Committee stated that it relied on the confidential information, the fact that Freitas admitted to having the discussions about the escape, and that he admitted to Winders that he would "leave in a minute" if he had the opportunity to escape.
 
 
 10
 On internal appeal, Warden Auger upheld the decision but reduced the penalty. Paul W. Grossheim, Deputy Director for Institutions of the Department of Corrections, denied the appeal of that decision.
 
 II. ANALYSIS
 
 11
 The fourteenth amendment to the Constitution forbids the State of Iowa from depriving Freitas of his right to liberty, except by due process of law. The deprivation in this case is the punishment imposed by the Committee: the loss of good time, the solitary confinement, administrative segregation, and the removal from the honor roll. Because Freitas is a prisoner, however, less procedural due process may be required because of security concerns in penal institutions. See Wolff v. McDonnell, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974).
 
 
 12
 Before analyzing Freitas' constitutional claims, we state that the only tenable ground for the disciplinary action against Freitas is that Freitas assisted, induced, or encouraged others to escape. There is no evidence that Freitas himself intended to escape. Nor can Freitas be disciplined for simply participating in discussions about escape. Clearly, Freitas must have had the intent to further an escape in some manner.
 
 A. Notice
 
 13
 Due process requires prison officials to inform a resident of charges to be brought against him or her and the evidence relied on in bringing those charges. See id. at 563-64, 94 S.Ct. at 2978-79. The adequacy of the notice hinges on whether it allows the inmate to "marshal the facts" and prepare a defense. Id. at 564, 94 S.Ct. at 2978.
 
 
 14
 The notice in this case stated that Freitas had violated reformatory rules 5, 27 and 41.[5] It also specifically stated:
 
 
 15
 Conspiring with others to escape: During the last 60 days, Freitas has talked with other inmates in the institution about planning an escape through the hobbycraft/school building. Freitas has informed myself [sic] that even though he was talking with these people, that he was not actually planning on escaping through the hobbycraft area.
 
 
 16
 In an effort to maintain the peace and tranquility of the institution, confidential names have been left out of this disciplinary report.
 
 
 17
 Freitas contends that this notice was constitutionally inadequate because it did not specify the dates of the alleged conversations, where they took place, their content or who participated in them. We do not find these omissions to violate the Constitution. The district court did not err in deciding that prison officials were justified in withholding information about confidential informants because of the risk of revealing their identities. Further information, either about the identity of the informants or the substance of what the informants said, may have endangered the informants. See Dawson v. Smith, 719 F.2d 896 (7th Cir.1983), cert. denied, 466 U.S. 929, 104 S.Ct. 1714, 8 L.Ed.2d 186 (1984). Cf. Muhammad v. Butler, 655 F.Supp. 1470, 1472 (D.N.J.1987) (officials' withholding of confidential information violated due process because prisoner clearly knew identity of confidential informant).
 
 
 18
 In addition, Freitas admitted to having the three conversations in question. It does not matter that he may have mistakenly assumed that the prison officials were withholding additional evidence to be used against him. The only information withheld concerned the confidential informants. The decision of the Committee ultimately relied solely on the content of those conversations revealed by Freitas, either to the Committee or to Winders, and the confidential reports. The notice informed Freitas that this was the evidence on which the Committee would rely. It therefore was constitutionally adequate.
 
 
 19
 B. Adequacy of Committee's Findings and Reasons
 
 
 20
 The Constitution requires that a written statement be drafted contemporaneously with the disciplinary action which informs an inmate of the evidence and reasons relied upon by the factfinders in reaching their decision. See Brown v. Frey, 807 F.2d 1407, 1411-12 (8th Cir.1986). Freitas contends that the factual findings of and the reasons given by the Committee were inadequate.[6]
 
 
 21
 In reaching its decision, the Committee relied on Freitas' admission to having had conversations about escaping on three separate occasions, on Freitas' indication he would "leave in a minute," if given the opportunity, and on confidential statements of informants. The Committee explicitly noted that it did not rely on the polygraph results in reaching its decision.
 
 
 22
 While these findings and reasons may not be extensive, the record does not indicate that the Committee relied on any other findings or reasons in reaching its decision. In addition, the Committee explicitly noted both its reliance on confidential information and that this information had been deleted for security reasons. See Rinehart v. Brewer, 483 F.Supp. 165, 170 (S.D.Ia.1980) (Confidential information may be omitted from written decision if decision "on its face indicates that the information has been deleted, and if a brief written summary of the confidential information is prepared."). We therefore find the statement of the Committee's findings and reasons is constitutionally adequate.
 
 C. Reliability
 
 23
 Freitas argues that additional due process protections should be afforded in cases involving confidential informants. He suggests that the district court should confirm the reliability of the informants in some manner.[7] The appellees on the other hand argue that due process does not require the district court to review the reliability of an informant.
 
 
 24
 We agree with Freitas that a determination of the reliability of confidential informants must be made. Due process requires that there be some evidence supporting the disciplinary determination. See Superintendent v. Hill, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-75, 86 L.Ed.2d 356 (1985). A bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt.[8] In addition, checking reliability will "help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id. at 455, 105 S.Ct. at 2774. The district court's review of confidential information, in camera, provides such a check. See McCollum v. Williford, 793 F.2d 903, 906 (7th Cir.1986).[9] The appellees give no reasons why this requirement would be burdensome, and we can think of none. We therefore hold that the magistrate did not err in requiring a determination of the confidential informants' reliability.
 
 
 25
 The prison officials contend that, even if reliability must be established, the magistrate properly did so here. We agree. After an in camera review, the magistrate found that the record contained sufficient indications of reliability of the informants. He noted that the statements of the two informants contained some factual background, were consistent with each other, and at least one of them was against the informant's penal interest.[10]
 
 
 26
 We have examined the confidential statements carefully. We note that they are largely conclusory and barely legible. Although they indicate that Freitas may have counselled some prisoners with respect to the escape, the statements are lacking in detail. Were we making the initial decision, we would be inclined to hold that the statements were inadequate. We cannot say, however, that the magistrate erred in finding sufficient indicia of reliability in the statements.[11]
 
 D. Sufficiency of the Evidence
 
 27
 Freitas claims the evidence is insufficient to support the Committee's finding of guilt. Although this is a close question, we find that there is sufficient evidence, i.e., some evidence,, supporting the Committee's finding that Freitas had conspired to assist others in planning an escape from the reformatory.[12]
 
 
 28
 We reiterate that Freitas was not and could not have been disciplined simply for talking about an escape. There is, however, some evidence showing that an escape was being planned and that Freitas had encouraged the furtherance of this plan or assisted in its preparation, although he was not going to participate in it.
 
 
 29
 Freitas had conversations with a number of inmates about an escape through the hobbycraft area. Freitas indicated in his statements to Winders that he would have nothing to do with these plots, and yet it appears that Freitas had a fair degree of knowledge of them. In addition, Freitas indicated on occasion that he would himself escape if given a good opportunity because of his fifty year sentence. This alone would not constitute some evidence. When this evidence is combined with the statements of the confidential informants which directly implicate Freitas for assisting in the plans, however, there is some evidence, and some evidence is sufficient under existing law.[13]
 
 III. CONCLUSION
 
 30
 The notice of the charges to be brought against Freitas and the explanation of the ruling by the Committee do not violate due process. The evidence showing the reliability of the confidential informants was scant but sufficient to satisfy due process. In addition, because the statements of the confidential informants directly implicated Freitas, there was some evidence that Freitas assisted or furthered the planning of an escape. We therefore affirm the district court's denial of relief under 42 U.S.C. Sec. 1983.
 
 
 
 [1]
 This matter was submitted to Magistrate James D. Hodges by consent of the parties pursuant to 28 U.S.C. Sec. 636(c)(1). Appeal of the final judgment of the magistrate to this Court is premised on section 636(c)(3)
 
 
 [2]
 The names Brimeyer and Behrends are also spelled Bermeyer and Barrens in the record
 
 
 [3]
 The memorandum stated that the following questions were asked of Freitas:
 
 
 [1]
 Within the past two months, have you seen any hacksaw blades not in control of staff?
 
 
 [2]
 Within the past two months, were you the one who had any hacksaw blades which were not in control of staff?
 
 
 [3]
 Within the past two months, other than Roberts has any inmate told you he had access to hacksaw blades?
 
 
 [4]
 Have you ever seriously said that you would kill a staff member to affect [sic] an escape?
 
 
 [5]
 Have you ever heard another inmate, besides [Moegenburg] say he would kill a staff member to escape?
 
 
 [6]
 In order to escape did you tell anyone that you would kill a staff member?
 
 
 [7]
 Did you intend to escape out of the hobbycraft window?
 Freitas answered "no" to each question. The examiner stated that he thought Freitas answered these questions truthfully.
 
 
 [4]
 The results were eventually typed on February 18, 1986. They show that Winders had accurately reported the content of the polygraph examination to the Committee, except apparently for one question. As the magistrate points out, Winders' memorandum states that Freitas answered "no" to the question: "Did you intend to escape out of the hobbycraft window?" The typed results of February 18 contain no such question. This discrepancy certainly did not prejudice Freitas since its inclusion in Winders' memorandum only could have confirmed that Freitas did not himself plan to escape
 
 
 [5]
 Rule 41, the rule on complicity, states in full that:
 A resident commits an offense under this subsection when the resident has complicity in or attempts to do any of the above offenses and shall be treated as though the resident personally committed the offense.
 The definition of complicity states that:
 A resident shall be responsible for the action of another if, with the intent that an offense be committed, the resident commands, induces, procures, or aids another to commit it.
 
 
 [6]
 The disciplinary decision of December 24, 1985, is the decision in issue in this case, since it superseded the November 12, 1985 decision. Stadtmueller replaced Thomas on the subcommittee which rendered the December 24 decision. Because Thomas did not participate in the decision in issue, he should be dismissed from the suit
 
 
 [7]
 Freitas also contends that his counsel or he should have access to the confidential reports. He argues that he no longer poses a threat to the informants because, as he learned from the prison officials pleadings, two of the informants were no longer at the Iowa Men's Reformatory. As the prison officials point out, however, these informants might someday be in the same facility as Freitas because of retransfers. While this may be speculation, it still is a very real concern in this case. Cf. Muhammad, 655 F.Supp. at 1472 (where prisoner should have been given access to confidential information because he already knew the identity of informant)
 
 
 [8]
 Hill states that the some evidence standard does not require an "independent assessment of the credibility of witnesses." Id. at 455, 105 S.Ct. at 2774. We believe consideration of the reliability of confidential informants to be a different matter. As the Third Circuit Court of Appeals stated in Helms v. Hewitt, 655 F.2d 487 (3d Cir.1981), rev'd on other grounds, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), "[a] determination of guilt [based on the report of a confidential informant] with no primary evidence of guilt in the form of witness statements, oral or written, or any form of corroborative evidence, amounts to a determination on the blind acceptance of the prison officer's statement." Id. at 502
 
 
 [9]
 In McCollum the Seventh Circuit has named four ways in which the reliability of an informant may be established:
 (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee ..., (2) corroborating testimony ..., (3) a statement on the record by the chairman of the disciplinary committee that, "he had firsthand knowledge of the sources of information and considered them reliable on the basis of 'their past record of reliability,' " or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential informant.
 793 F.2d at 906 (citations omitted). We agree with the district court that these methods are not necessarily exclusive nor is any one of them necessarily sufficient to determine reliability. Cf. Rinehart, 483 F.Supp. at 170 (requiring written summary of confidential information relied on by prison disciplinary committee).
 
 
 [10]
 As the Court of Appeals in McCollum stated, in camera review of the reliability of a confidential report determines:
 (1) whether providing the inmate with "more specific factual information ... would seriously risk exposing the confidential informant's identity;" (2) whether the confidential report, "contains ... sufficient additional information to bolster the reliability of the [confidential] information;" or (3) whether the disciplinary committee "adopt[ed] the credibility determination made by the prison investigator."
 793 F.2d at 906 (quoting Mendoza v. Miller, 779 F.2d 1287, 1293 (7th Cir.1985), cert. denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986)) (citations omitted and bracketed portions in original).
 
 
 [11]
 To ensure the proper establishment of reliability of confidential informants, prison officials should follow the directions of the district court in Rinehart. In Rinehart, the district court stated that a written summary of confidential information should include:
 (1) A brief written summary of all the confidential information, both oral and written, available to the disciplinary committee which pertains to the alleged incident under consideration;
 (2) A statement setting forth the identity of the informants either by name or by his relationship to the penitentiary;
 (3) A statement indicating what confidential information was relied upon by the disciplinary committee in reaching its decision;
 (4) A statement indicating why the disciplinary committee believes the confidential information relied upon to be credible, whether any corroboration of such information is available, and if ... available, what the corroborating information is; and
 (5) A statement indicating why the disciplinary committee believes the confidential information should in fact be kept confidential.
 
 
 [483]
 F.Supp. at 170
 
 
 [12]
 Freitas also argues that the substantial evidence test should be applied in prisoner disciplinary cases where confidential informants are involved. We disagree. We believe that rectifying any prejudice to a prisoner resulting from the presence of confidential information requires establishing the reliability of the informant, not the alteration of the standard of review. By altering the standard of review, we would affect the review of all the evidence, not just the confidential information. This is contrary to the Supreme Court's directions in Hill, 472 U.S. at 455, 105 S.Ct. at 2774
 
 
 [13]
 Freitas also raises two issues which were not raised below. He intimates that he should be allowed to take a polygraph examination which addresses the question of whether he participated in planning or furthering an escape. We hold that Freitas was not entitled to a polygraph examination on this issue. We also hold that Freitas was not entitled to a lawyer or an aide to present his case to the Committee. In Wolff, the Supreme Court stated that a prisoner may be entitled to an attorney or aide in prison disciplinary proceedings if, for example, the issues in the case are complex or the prisoner is illiterate. 418 U.S. at 570, 94 S.Ct. at 2981. The issues in this case are not complex, and Freitas' written work in the record demonstrates that he clearly grasped them