# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1013

_____

William S. Dible,                          *
                                           *
            Appellee,                      *
                                           *   Appeal from the United States
    v.                                     *   District Court for the
                                           *   Northern District of Iowa.
Steve Scholl, Individually, Treatment      *
Facility Manager; Gary O. Maynard,         *
Individually, Director of Iowa             *
Department of Corrections,                 *
                                           *
            Appellants.                    *

_____

Submitted: September 24, 2007
Filed: November 8, 2007

_____

Before BYE, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Former prisoner William S. Dible brought this action under 42 U.S.C. § 1983, complaining that he was denied due process when prison officials issued him an inadequate disciplinary notice. The prison officials moved for summary judgment on

qualified immunity grounds, which the district court[1] denied. On this interlocutory appeal, we affirm.

## I.

From February 1994 to August 2005, Dible was in the custody of the Iowa Department of Corrections. In April 2003, the Department granted work-release status to Dible and placed him at the Residential Treatment Facility in Sioux City, Iowa. Steve Scholl was the Division Manager of the facility. As part of his work-release status, Dible was privileged to use an automobile, work five days per week, attend rehabilitation sessions, take furloughs, and have four hours of free time each day.

On July 22, 2003, Scholl issued a disciplinary notice to Dible: "Based on confidential information received by facility staff from two sources, Dible is charged with the cited violations. Dible has threatened and choked a citizen of the State of Iowa." The notice was based entirely on confidential information. It did not identify the alleged victim, name any witnesses, or specify the date or location of the alleged assault. In a section subtitled "Resident Rights," the notice indicated that Dible was entitled: to a minimum of 24 hours to prepare for a disciplinary hearing, to present evidence at the hearing, and to request available witnesses or statements related to the allegations.

Dible received the notice on July 23 and claimed innocence. Scholl made a handwritten note that Dible wanted "enough time to gather evidence and assistance from staff to gather trial evidence." Scholl also noted that Dible wanted a lawyer,

---

[1]The Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

witnesses, and statements, which Dible was willing to receive with the confidential information redacted.

At the hearing conducted five days later, two staff members found that Dible was guilty of assault and making threats "based on confidential information [they] received from the jail and the confidential information received by facility staff from two sources." The staff members also noted that Dible had requested a lawyer and had asked for assistance from staff in gathering information related to the charges. As a result of the hearing, Dible was reclassified, lost 60 days of good time credit and his work-release status, and was returned to the state penitentiary.

After exhausting his administrative remedies, Dible applied to an Iowa court for postconviction relief from the disciplinary proceeding, claiming that he was denied due process because the disciplinary notice issued to him was constitutionally defective. The Iowa court reviewed the confidential information *in camera* and granted summary judgment in favor of the State. Dible then petitioned the Iowa Court of Appeals for review, which held that "the notice was sufficient under due process principles." Dible v. Iowa Dist. Ct., No. 04-0619, 2004 WL 2952721, at *1 (Iowa Ct. App. Dec. 22, 2004).

On July 13, 2005, Dible filed a complaint in the United States District Court for the Northern District of Iowa under 42 U.S.C. § 1983 against Defendants Scholl and Gary Maynard, who was Director of the Iowa Department of Corrections. Dible alleged that he was denied due process of law "because the disciplinary notice failed to contain adequate information[,] specifically the name of the alleged victim, a general time and general location, which precluded the plaintiff from defending himself in a meaningful manner." Scholl and Maynard moved to dismiss for failure to state a claim. The district court denied their motion. Dible v. Scholl, 410 F. Supp. 2d 807, 828 (N.D. Iowa 2006).

Scholl and Maynard then moved for summary judgment on grounds of qualified immunity; Dible filed a cross-motion for summary judgment on the merits. The district court denied qualified immunity and granted Dible's cross-motion, leaving damages as the sole issue for trial. Scholl and Maynard immediately appealed, requesting that we reverse the district court's denial of qualified immunity.

## II.

Because qualified immunity is "in part an entitlement not to be forced to litigate the consequences of official conduct," a government official who has moved for summary judgment on qualified immunity grounds may immediately appeal from its denial. Mitchell v. Forsyth, 472 U.S. 511, 527, 530 (1985); Bearden v. Lemon, 475 F.3d 926, 929 (8th Cir. 2007). This limited review is an exception to the final judgment rule, which usually prohibits appeals from a denial of summary judgment. 28 U.S.C. § 1291; Bearden, 475 F.3d at 929. Although we have some discretion to exercise pendent appellate jurisdiction over related rulings that are not themselves immediately appealable, we have not been asked to do so. See Swint v. Chambers County Comm'n, 514 U.S. 35, 50-51 (1995); Nebraska Beef, Ltd. v. Greening, 398 F.3d 1080, 1083 (8th Cir. 2005). Therefore we review only the district court's decision to deny qualified immunity.

We review *de novo* the district court's denial of summary judgment on qualified immunity grounds, construing the evidence in the light most favorable to the nonmoving party. Bearden, 475 F.3d at 929. Reversal is called for if the evidence in the record reveals that there is no genuine issue as to any material fact, such that the moving parties are entitled to qualified immunity as a matter of law. See Fed. R. Civ. P. 56(c). As the moving parties, the Defendants are obliged to identify the evidence that shows a genuine issue does not exist. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a government official seeks qualified immunity, we first inquire whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation could be made out, we then ask whether the right was clearly established. Id. We undertake these two inquiries in view of specific facts, not general propositions. Id.; Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).

A.

The Defendants suggest that the disciplinary notice was legally sufficient such that we may dispose of the qualified immunity issue based on the first prong of Saucier. In a prison disciplinary proceeding, the prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). The written notice must be adequate to enable the accused prisoner to "marshal the facts and prepare a defense." Wolff, 418 U.S. at 564; Freitas v. Auger, 837 F.2d 806, 809 (8th Cir. 1988).

Due process aims "to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Hill, 472 U.S. at 455. To prevent arbitrary deprivations, the notice should spell out "more than a conclusory charge; an inmate must receive notice of at least some specific facts underlying the accusation." Sira v. Morton, 380 F.3d 57, 70 (2d Cir. 2004) (internal quotation omitted). If known, prison officials should provide general information about the date, place, and nature of the alleged misconduct. Id. at 72. Specific facts may be withheld, however, when necessary to protect informants from intimidation and violent reprisals. Wolff, 418 U.S. at 565-66; see Freitas, 837 F.2d at 809.

The notice issued to Dible contained no information specifying the victim, date, or place of the alleged choking incident. He was accused of a single instance of misconduct, involving a single victim. If he was guilty, he would already know the time and place of the incident, and there would be no harm in including this information in the notice. Assuming Dible was innocent, he would be uncertain of what evidence, such as an alibi, could refute the allegation. Under the terms of the notice, the incident could have occurred any time during the three months he was at the Sioux City facility, or even during the nine years he was incarcerated in Iowa. As a prisoner with work-release status, the class of potential victims (or false accusers) was exceedingly large. The record does not disclose any reasons why specific facts were not included in the disciplinary notice.

Balancing the prisoner's right to a defense with the prison's need for security is reflected both in the requirements of Wolff, 418 U.S. at 572, and the need for courts to determine what procedural safeguards are feasible in a particular case. See McCollum v. Miller, 695 F.2d 1044, 1049 (7th Cir. 1982). Before it can sort out the proper balance, the district court must be given reasons to justify the absence of specific facts from a disciplinary notice. See Sira, 380 F.3d at 76. As the movants for summary judgment, it was the Defendants' responsibility to present these reasons to the district court, even if only disclosed *in camera*. See Freitas, 837 F.2d at 811. No such reasons were given to the district court. Without support in the record, we cannot infer that the lack of specific facts in the disciplinary notice was justified by countervailing correctional needs. See McCollum, 695 F.2d at 1048-49. The district court did not err in finding that the disciplinary notice failed to comport with due process.

B.

Turning to the second Saucier inquiry, the Defendants urge that it was not clearly established that the notice issued to Dible violated his due process rights under Wolff. For a right to be clearly established, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates the right." Anderson, 483 U.S. at 640. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). Moreover, this court has a broad view of what makes "clearly established law" for the purpose of qualified immunity. Bearden, 475 F.3d at 929; Hayes v. Long, 72 F.3d 70, 73 (8th Cir. 1995). When Dible's disciplinary notice was issued, 29 years had passed since the Supreme Court first declared what due process required in a prison disciplinary notice. Wolff, 418 U.S. at 564. Twenty-nine years is enough time that "a reasonably competent public official should know the law governing his conduct." See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982).

To argue that Dible's right was not clearly established, the Defendants rely on the decisions of the Iowa courts denying Dible's application for postconviction relief. Because those decisions came after the fact, the Defendants could not have relied on them when they issued the disciplinary notice. Further, unlike the Iowa courts, the district court did not have the benefit of an *in camera* review of the confidential information upon which the allegations against Dible were based. Failing that, the summary judgment standard constrains us to affirm the district court's denial of qualified immunity.

III.

The district court's decision is affirmed.

_____