# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1453

_____

Curtis W. McGhee, Jr.,                              *
                                                    *
        Appellee,                                  *
                                                    *
    v.                                             *
                                                    *
Pottawattamie County, Iowa;                         *
Joseph Hrvol; David Richter,                        *
                                                    *
        Appellants.                                *
_____                             *   Appeals from the United States
                                                    *   District Court for the
Terry Harrington, individually and in               *   Southern District of Iowa.
his capacity as the father of Nicole                *
Antoinette Harrington,                              *
                                                    *
        Appellee,                                  *
                                                    *
    v.                                             *
                                                    *
County of Pottawattamie, Iowa;                      *
David Richter, in his individual and                *
official capacities; Joseph Hrvol, in               *
his individual and official capacities,             *
                                                    *
        Appellants.                                *

_____

No. 07-1524

_____

Curtis W. McGhee Jr.,                          *
                                               *
                Appellee,                      *
                                               *
        v.                                     *
                                               *
Matthew Wilber,                                *
                                               *
                Appellant,                     *
_____                        *
                                               *
Terry Harrington, individually and in          *
his capacity as the father of Nicole           *
Antoinette Harrington,                         *
                                               *
                Appellee.                      *

_____

Submitted: May 15, 2008
    Filed:  November 21, 2008

_____

Before RILEY, TASHIMA,[1] and SMITH Circuit Judges.

_____

_____

    [1]The Honorable A. Wallace Tashima, United States Circuit Judge for the Ninth Circuit, sitting by designation.

RILEY, Circuit Judge.

In 1978, Curtis W. McGhee Jr. (McGhee) and Terry Harrington (Harrington) were convicted of murdering John Schweer, a retired police department captain who was working as a security guard. McGhee and Harrington were each sentenced to life imprisonment. In 2002, the Iowa Supreme Court reversed Harrington's conviction and remanded for a new trial, finding the prosecutor committed a <u>Brady</u>[2] violation by failing to disclose evidence of an alternative suspect. The current prosecutor, Matthew Wilber (Wilber), concluded it would be impossible to retry Harrington and also agreed to move to vacate McGhee's conviction. McGhee agreed to enter an <u>Alford</u>[3] plea to second degree murder in exchange for a sentence of time served. With the agreements, McGhee was released.

McGhee and Harrington both brought civil rights actions against Pottawattamie County, Iowa (County), and the former prosecutors and officers involved in the initial investigation and prosecution, arguing they used perjured and fabricated testimony and withheld evidence in violation of McGhee's and Harrington's constitutional rights. McGhee and Harrington also alleged Wilber defamed them. Defendants moved for summary judgment based on qualified and absolute immunity. The district court found some defendants were entitled to qualified immunity on certain claims and denied qualified immunity and absolute immunity on the remaining claims.

Defendants Joseph Hrvol (Hrvol) and David Richter (Richter) filed a consolidated interlocutory appeal from the denial of qualified, absolute, and sovereign immunity arguing the district court: (1) used an improper standard for determining probable cause in the absolute immunity analysis, (2) erred in waiving sovereign immunity for the prosecutors, and (3) erred in concluding McGhee and Harrington

---

[2]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[3]<u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).

alleged a constitutional violation when the district court denied qualified immunity to Hrvol and Richter. Wilber also appeals the denial of his motion for summary judgment regarding McGhee's defamation claim, contending Wilber has sovereign and qualified immunity. We affirm in part and reverse in part.

## I.    BACKGROUND

In July of 1977, John Schweer (Schweer), a retired police captain working as a night security guard at the McIntyre Oldsmobile dealership (McIntyre dealership) in Council Bluffs, Iowa, was shot and killed with a 12-gauge shotgun. Two Council Bluffs detectives, Daniel C. Larsen (Detective Larsen) and Lyle W. Brown (Detective Brown) (collectively, detectives) led the murder investigation with the active participation of Assistant County Attorney Hrvol participating in witness interviews and canvassing the neighborhood near the crime scene. Hrvol admits he was "intensely involved in the investigation," even though he was not yet assigned any role in the prosecution of the case.

Richter, the County Attorney, oversaw his office's participation in the murder investigation and received regular reports from Hrvol. Richter had been appointed as County Attorney in 1976 and would stand for election, for the first time, in 1978. Richter was campaigning in the face of Schweer's unsolved murder.

In the investigation's early stages, more than a dozen individuals were under suspicion, but McGhee and Harrington were not yet suspects. The best lead was Charles Gates, known to investigators as "the man with the dog and shotgun." Gates had been a suspect in a 1963 homicide investigation involving the murder of a female coworker of Gates. The detectives knew Schweer left a note at the McIntyre dealership the night before his murder noting Schweer had chased off someone who had a gun. A witness saw a man with a dog and a shotgun around the time of the murder, a man Detective Larsen determined was Gates. Richter personally interviewed another witness who positively identified Gates as the person seen

-4-

walking dogs in the vicinity of the murder. Two more witnesses also placed Gates near the scene of the murder in the relevant time frame. Richter and Hrvol went so far as to consult an astrologer regarding their suspicions of Gates. Gates submitted to a polygraph exam in which the examiner opined Gates was not truthful when he denied owning a shotgun and, more importantly, denied shooting Schweer. Eight reports dealing with Gates and the murder investigation were written by the Council Bluffs police, yet, Richter and Hrvol never disclosed any of this evidence to Harrington's or McGhee's trial or post-conviction relief counsel. Hrvol, in answering McGhee's post-conviction hearing discovery, went so far as to disavow any other suspects but McGhee, inaccurately answering that the "man and dog" (Gates) was "never found or identified."

The primary witness relied upon in bringing charges against McGhee and Harrington was Kevin Hughes (Hughes), a 16-year old with a long criminal record. Hughes was interrogated by both Fremont, Nebraska, and Council Bluffs, Iowa, police before the arrests of Harrington and McGhee. On September 9, 1977, Hughes, along with two other teenagers, was stopped in a Cadillac which had been stolen nine days earlier from a Fremont, Nebraska, car dealership. Hughes denied stealing the Cadillac, and identified Harrington, McGhee and Anthony Houston (Houston) as the men who stole the Cadillac and three other cars from dealerships in Fremont and Lincoln, Nebraska, and Council Bluffs, Iowa.

Detectives Larsen and Brown traveled to Lincoln to interview Hughes, telling Hughes they knew he was involved in the car theft ring and the Schweer murder, but promised: (1) he would not be charged with the murder, (2) he would be helped with his other criminal charges, and (3) there was a $5,000 reward available, if Hughes helped the detectives with the Schweer murder. Hughes agreed to help.

Hughes's first written statement identified a light skinned man, later identified as Steven Frazier, as the man who told Hughes that he stole a Lincoln Continental

from the McIntyre dealership, killing a security guard in the process. The detectives told Hughes they knew he was lying because no Lincoln was stolen from the McIntrye dealership.

Next, Hughes identified Arnold Kelly as involved in the murder. This was also demonstrably false as Kelly was in the Kansas City Job Corps at the time of the murder.

Harrington and McGhee assert that Hrvol, Richter, Detective Larsen and Detective Brown (1977 Defendants) began to pressure Hughes to implicate Harrington, McGhee and Houston in the Schweer murder, even though Hughes initially expressed his belief the three were incapable of murder. Hughes's story then changed again as he reported Harrington and the others told him they had murdered Schweer. Authorities accused Hughes of lying about this conversation. Once confronted, Hughes admitted to lying once more.

On September 30, 1977, Hughes told police he was at the McIntyre dealership when Schweer was murdered. The 1977 Defendants met with Hughes at the murder scene. After this visit, Hughes reported he was with Houston at the McIntyre dealership when the Schweer murder occurred. The 1977 Defendants knew Hughes was lying again because they already knew Houston was in jail at the time of the murder.

Hughes's story continued to change. When describing the murder weapon, Hughes first said Schweer was murdered with a pistol. This was wrong. Hughes next claimed a 20-gauge pump shotgun was the murder weapon, which was also inaccurate. Finally, only after being told by the 1977 Defendants a 12-gauge shotgun shell was found near the body did Hughes say a 12-gauge shotgun was the murder weapon.

In light of the changing stories, inaccuracies and inconsistencies, Detective Larsen considered Hughes's credibility suspect and later Detective Larsen admitted he always had problems with Hughes's final story. Nevertheless, a preliminary True Information charging Harrington with Schweer's murder was issued on November 16, 1977, and a similar preliminary True Information charging McGhee was issued on November 17, 1977, based on Hughes's accusations. Richter and Hrvol approved the decision to arrest McGhee and Harrington, who were arrested on November 17, 1977. A True Information charging McGhee and Harrington with first degree murder was filed on February 17, 1978.

At trial, the state's cases were based upon the testimony of: (1) Hughes, (2) the two other teens arrested with Hughes in the stolen Cadillac, (3) two other friends of Hughes, and (4) jailhouse informants who testified Harrington confessed while housed with or adjacent to them. McGhee and Harrington were found guilty in separate trials and sentenced to life.

Both McGhee and Harrington pursued post conviction relief, but were unsuccessful. Only after Anne Danaher[4] (Danaher) began an independent investigation did the extent of the Brady violations committed by Hrvol and Richter come to light. These Brady violations ultimately were the grounds upon which Harrington's conviction was overturned by the Iowa Supreme Court.

While Wilber dismissed all charges against Harrington and agreed to vacate McGhee's sentence, Wilber announced in a press conference and a press release his personal belief that he had no doubt Harrington had committed the murder, the jury made the right decision, and the "right man went to prison for over twenty-five years." Wilber stated he "owed it to the family of John Schweer to do my best on this case to

_____

[4]Danaher was an employee at the prison where Harrington was incarcerated. Danaher got to know Harrington and his family.

bring his killer to justice a second time." Wilber concluded by saying "[a]s for the final justice for Terry Harrington, I will defer that honor to a higher power."

As for McGhee, Wilber said, "McGhee pleaded no contest today to a charge of second degree murder for the death of John Schweer . . . . Even though Mr. McGhee did not pull the trigger . . . our case against him was stronger than [the case] against Terry Harrington [as] . . . McGhee had made admissions to at least three different people about being with Terry Harrington when Harrington shot a police officer in Council Bluffs." Wilber noted these statements were not admissible against Harrington, but "would certainly come into evidence at a trial against Mr. McGhee."

Hughes, the other juvenile witnesses, and the jailhouse informants who testified against Harrington and McGhee have recanted their testimonies. Hughes admits he lied, first in hopes of garnering a proffered reward, and then in an attempt to avoid being personally charged with the murder and car thefts.

McGhee and Harrington both brought civil rights actions against the County and the former prosecutors and officers involved in the initial investigation and prosecution, arguing they used perjured and fabricated testimony and withheld evidence in violation of McGhee's and Harrington's constitutional rights. McGhee and Harrington also allege Wilber defamed them. Defendants moved for summary judgment based on qualified and absolute immunity. The district court found some defendants were entitled to qualified immunity on some claims, and denied qualified immunity and absolute immunity on the remaining claims. Hrvol and Richter filed this interlocutory appeal, which Wilber joined.[5]

---

[5]Harrington also filed a defamation claim against Wilber. The district court denied Wilber's motion for summary judgment on Harrington's defamation claim. See Harrington v. Wilber, 353 F. Supp. 2d 1033, 1048 (S.D. Iowa 2005). Because Wilber did not appeal this decision, we will not consider this claim.

## II.  DISCUSSION

In this interlocutory appeal, Hrvol and Richter assert the district court: (1) used an improper standard for determining probable cause in the absolute immunity analysis, (2) erred in waiving sovereign immunity for the prosecutors, Hrvol and Richter, and (3) erred in concluding McGhee and Harrington alleged a constitutional violation when the district court denied qualified immunity to Hrvol and Richter. Wilber appeals the denial of his motion for summary judgment in regards to McGhee's defamation claim on the basis Wilber has sovereign and qualified immunity.

### A.  Jurisdiction

We ordinarily lack jurisdiction over an interlocutory appeal challenging the denial of a summary judgment motion, but when a summary judgment motion based on sovereign immunity or qualified immunity is denied, an interlocutory appeal "is appropriate because immunity from suit is effectively lost if the party claiming it is erroneously forced to stand trial." Monroe v. Ark. State Univ., 495 F.3d 591, 593-94 (8th Cir. 2007) (internal alterations, quotation marks and citations omitted). Hrvol, Richter and Wilber all assert the district court erred in finding they were not shielded by sovereign or qualified immunity. Thus, we have jurisdiction to determine if the appellants' motions for summary judgment based upon sovereign and qualified immunity were improperly denied.

### B.  Standards of Review

"We review de novo the district court's denial of summary judgment on qualified immunity grounds, construing the evidence in the light most favorable to the nonmoving party." Dible v. Scholl, 506 F.3d 1106, 1109 (8th Cir. 2007) (citation and emphasis omitted). We review de novo as well "the question of whether a state (or its agencies and officials) has waived sovereign immunity." Doe v. Nebraska, 345 F.3d 593, 597 (8th Cir. 2003) (citation omitted).

## C.    Absolute Immunity and Probable Cause

Before the establishment of probable cause to arrest, a prosecutor generally will not be entitled to absolute immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993) ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.") (footnote reference omitted). Defendants assert the district court erred in determining probable cause was not present at the time Harrington and McGhee were arrested for Schweer's murder and thereby determining Hrvol and Richter were not entitled to absolute immunity. Specifically, defendants assert probable cause justified arresting Harrington and McGhee for car theft and, because probable cause exists to support arrests for car theft, then Hrvol and Richter are entitled to absolute immunity. Defendants raised this argument in the district court for the first time in their summary judgment reply brief. The district court did not consider this argument. See S.D. Iowa L.R. 7(g) (A reply brief may be filed "to assert newly-decided authority or to respond to new and unanticipated arguments made in the resistance [brief]."); see also Jones v. Shalala, 887 F. Supp. 210, 214 n.3 (S.D. Iowa 1995) ("[T]he reply brief submitted by [defendants] is not in compliance with the local rule in that it raises new issues not addressed in [their] initial brief."). The district court did not abuse its discretion or otherwise commit error by following the court's local rule prohibiting new arguments submitted in a reply brief. Because the defendant's probable cause argument was not properly raised in the district court, we decline to consider it on appeal. See Aaron v. Target Corp., 357 F.3d 768, 779 (8th Cir. 2004) ("Arguments and issues raised for the first time on appeal are generally not considered, and no good reason has been advanced to depart from that rule.") .

## D.    Sovereign Immunity

Defendants next assert the district court erred when it waived sovereign immunity for Hrvol, Richter and Wilber, arguing they are shielded by the Iowa Tort Claims Act (ITCA), Iowa Code § 669 *et seq.*, and/or the Iowa Municipal Tort Claims Act (IMTCA), Iowa Code § 670 *et seq.* Under the doctrine of sovereign immunity a

-10-

tort claim against a state employee, acting within the scope of his office or employment with the state, must be brought pursuant to the ITCA.  See Iowa Code § 669.2(3)-(4).

The State of Iowa (Iowa) possesses sovereign immunity.  See Doe, 345 F.3d at 597 (stating the Eleventh Amendment provides states with immunity from suits).  As such, Iowa and its employees can only be sued to the extent Iowa expressly waives its immunity.  Id.  The ITCA is a statutorily defined waiver of sovereign immunity allowing certain claims to be filed against Iowa which fit within the ITCA's specified reach, and which do not fall within explicit exceptions where Iowa expressly retained its sovereign immunity.

### 1.    Hrvol and Richter

Hrvol and Richter challenge the district court's denial of their summary judgment motion on the state law claims based on sovereign immunity.  Harrington asserted a claim of intentional infliction of emotional distress and a claim for loss of parental consortium, on behalf of his daughter, against Hrvol and Richter.  McGhee asserted claims of false arrest and imprisonment and intentional infliction of emotional distress against Hrvol and Richter.  Harrington and McGhee base their claims on allegations Hrvol and Richter arrested them without probable cause, coerced and coached witnesses, fabricated evidence against them, and concealed exculpatory evidence.  Both Harrington and McGhee contend Hrvol and Richter were acting within the scope of their employment at all times relevant to the complaint.

Having concluded Hrvol and Richter could be considered state employees under the ITCA, the district court found they were entitled to sovereign immunity to the extent Harrington's and McGhee's claims were premised on allegations Hrvol and Richter concealed exculpatory evidence.  The district court reasoned these actions were taken within the scope of Hrvol's and Richter's prosecutorial duties.  However, the district court found Hrvol and Richter were not entitled to sovereign immunity to

-11-

the extent the state law claims were premised on allegations Hrvol and Richter arrested Harrington and McGhee without probable cause, coerced and coached witnesses, and fabricated evidence. The district court, relying on its analysis of absolute immunity, concluded that, because these "investigatory actions" were taken before filing the True Information, the investigatory actions "could arguably be deemed to have been taken outside the 'scope of their employment' as prosecutors of state criminal violations."

Hrvol and Richter argue the district court erred in failing to conduct an analysis of the scope of their employment for sovereign immunity purposes distinct from the court's analysis of whether Hrvol and Richter were entitled to absolute immunity. We agree.

To determine whether Hrvol and Richter are entitled to sovereign immunity for the actions they took before filing the True Information, the district court should have looked to the duties of county attorneys as they existed in 1977 and 1978, and to the provisions of the ITCA. The ITCA applies to:

> Any claim against an employee of the state for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state *while acting within the scope of the employee's office or employment.*

Iowa Code § 669.2(3)(b) (emphasis added). "'Acting within the scope of the employee's office or employment' means acting in the employee's line of duty as an employee of the state." Iowa Code § 669.2(1).

Among the duties of a county attorney were the duties to:

> 1. Diligently enforce or cause to be enforced in his county, all of the laws of the state, actions for a violation of which may be commenced or

-12-

prosecuted in the name of the state of Iowa, or by him as county attorney, except as otherwise specially provided.

. . . .

6. Commence, prosecute, and defend all actions and proceedings in which any county officer, in his official capacity, or the county, is interested, or a party.

. . . .

11. Perform other duties enjoined upon him by law.

Iowa Code § 336.2(1), (6) & (11) (1977). In separate subsections, the Iowa Code distinguishes between the duty to "prosecute" an action and the duty to "enforce" the laws of the state of Iowa, the "violation of which **may** be . . . prosecuted." Iowa Code § 336.2(1) (1977) (emphasis added). Thus, to "enforce" necessarily must mean something other than to "prosecute." According to Black's Law Dictionary 569 (8th ed. 2004), the term "enforce" means "[t]o give force or effect to (a law, etc.)" or "to compel obedience to." The Iowa Code also broadly expands the county attorney's duties to include "[p]erform[ing] other duties enjoined upon him by law." Iowa Code § 336.2(11) (1977). We conclude the official duties of a county attorney included more than the mere prosecution of an action.

If Hrvol and Richter were acting within the scope of their office or employment during the investigation, the court must consider whether Iowa has waived sovereign immunity for the state law claims asserted against them. The ITCA does not apply to, thus the state retains sovereign immunity for, "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Iowa Code § 669.14(4). See Trobaugh v. Sondag, 668 N.W.2d 577, 584 (Iowa 2003) (stating § 669.14(4) "describe[s] the categories of claims for which the State has not waived its sovereign immunity"). A plaintiff may not assert a claim against the state when "[t]he gravamen of [the] plaintiff's claim . . . is the functional equivalent" of a claim listed in § 669.14(4). Greene v. Friend of Court, Polk County, 406 N.W.2d 433,

-13-

436 (Iowa 1987) (referring to Iowa Code § 25A.14(4), which was the prior version of § 669.14(4), and explaining § 669.14(4) "identifies excluded claims in terms of the type of wrong inflicted").

If Hrvol and Richter were acting within the scope of their office or employment, the ITCA explicitly bars McGhee from asserting claims of false imprisonment and false arrest against them. Iowa Code § 669.14(4). McGhee's and Harrington's claims for intentional infliction of emotional distress and Harrington's claim for loss of parental consortium are premised on allegations Hrvol and Richter arrested them without probable cause, coerced and coached witnesses, and fabricated evidence. The gravamen of these claims arises out of false imprisonment, false arrest, abuse of process and deceit.

We decline to decide whether Hrvol and Richter were acting within the scope of their duties as county attorneys when they took "investigatory actions" before filing the True Information. Instead, we reverse the district court's denial of sovereign immunity and remand this matter to the district court for further development of the record and analysis consistent with this opinion.

### 2.    Wilber

Wilber appeals the denial of his summary judgment motion on McGhee's defamation claim based on Wilber's sovereign immunity and qualified immunity defenses under the ITCA, an argument Wilber did not make to the district court where he relied instead upon the protections afforded by the IMTCA. The district court held the IMTCA's protection only applied if Wilber's comments were "a judgment call driven by social, economic or political concerns" and found they were not.

The ITCA defines a state employee, for purposes of the act, as including any "persons acting on behalf of the state . . . in any official capacity, temporarily or permanently in the service of the state of Iowa." Iowa Code § 669.2(4). Thus, for

purposes of the ITCA, Wilber is a state employee when acting in his official capacity as County Attorney. We find no language within the ITCA which would restrict Wilber's immunity under the ITCA solely to prosecutorial acts. Instead, the only restriction is for acts taken in an official capacity. See id. Clearly, when Wilber held his press conference and issued his written press release he was acting in his official capacity as County Attorney discussing prosecutions by the state.

McGhee's defamation claim is governed by the ITCA which explicitly bars a claim for defamation arising out of libel or slander. See Iowa Code § 669.14(4). Therefore, the district court erred as a matter of law in denying Wilber's motion for summary judgment as to McGhee's defamation claim. This claim must be dismissed.

### E. Constitutional Violation

Hrvol and Richter assert the district court erred in determining their acts of obtaining, manufacturing, coercing and fabricating evidence before the filing of the True Information constituted a constitutional violation justifying the denial of qualified immunity. Hrvol and Richter assert it is only the use of this evidence, not its procurement, that constitutes a violation of McGhee's and Harrington's substantive due process rights. Further, as the district court held, Hrvol and Richter have absolute immunity for their use of this evidence at trial. Thus, Hrvol and Richter alternatively admit they violated McGhee's and Harrington's right to substantive due process, but assert the violation was not in procuring, but only in using the evidence at trial, an act for which they have absolute immunity.

The district court held the procurement or fabrication of the evidence constituted a due process violation, noting this court has held a person's due process rights are violated when police officers use falsified evidence to procure a conviction, see Wilson v. Lawrence, 260 F.3d 946, 954-55 (8th Cir. 2001), stating "it would be a perverse doctrine of tort and constitutional law that would hold liable the fabricator of evidence who hands it to an unsuspecting prosecutor but exonerate the wrongdoer

-15-

who enlists himself in a scheme to deprive a person of liberty." McGhee v. Pottawattamie County, 475 F. Supp. 2d 862, 907 (S.D. Iowa 2007).

The district court's decision is in accord with the Second Circuit Court of Appeals which held "the right at issue is a constitutional right, provided that the deprivation of liberty . . . can be shown to be the result of [the prosecutor's] fabrication of evidence" where the prosecutor was accused of both fabricating evidence and then using the fabricated evidence at trial. Zahrey v. Coffey, 221 F.3d 342, 344, 349 (2d Cir. 2000). The district court acknowledged that the Second Circuit noted its decision was "in tension, if not conflict, with the majority opinion by Judge Easterbrook for the Seventh Circuit in Buckley IV,[6] on remand from the Supreme Court," but the Second Circuit concluded it was unclear if Buckley I[7] was decided on this basis or on the distinguishable basis of causation. Zahrey, 221 F.3d at 354-55. Even if there is some tension, there is agreement "[i]mmunity is absolute only when the prosecutor performs distinctively prosecutorial functions." Buckley I, 919 F.2d at 1240.

We find immunity does not extend to the actions of a County Attorney who violates a person's substantive due process rights by obtaining, manufacturing, coercing and fabricating evidence before filing formal charges, because this is not "a distinctly prosecutorial function." The district court was correct in denying qualified immunity to Hrvol and Richter for their acts before the filing of formal charges.

---

[6]Buckley IV refers to Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994).

[7]Buckley I refers to Buckley v. Fitzsimmons, 919 F.2d 1230 (7th Cir. 1990).

## III.  CONCLUSION

We reverse the decision of the district court as to McGhee's defamation claim against Wilber, because Wilber is entitled to sovereign immunity under the ITCA for those alleged actions.  We also reverse and remand the decision of the district court denying sovereign immunity to Hrvol and Richter on Harrington's and McGhee's state law claims premised on Hrvol's and Richter's investigatory actions taken before filing the True Information.  We remand this issue to the district court for further development of the record and analysis consistent with this opinion.  We affirm the district court in all other respects.

_____