Terry HARRINGTON, Plaintiff,

v.

Matthew D. WILBER and
Pottawattamie County,
Iowa, Defendants.

No. 4:03–cv–90616 RP–TJS.

United States District Court,
S.D. Iowa,
Central Division.

June 30, 2009.

Stephen Dillard Davis, Canel, Davis & King, Chicago, IL, Pro Hac Vice, for Plaintiff.

Vincent J. Connelly, Lori E. Lightfoot, Zaldwaynaka Scott, Mayer Brown LLP, Chicago, IL, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Margaret J. Reyes, Pottawattamie County Attorneys Office, Council Bluffs, IA, for Defendants.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Plaintiff's "Objections to Magistrate Judge's Orders Entered on 5/20/09," filed May 27, 2009. Clerk's No. 119. Defendants filed a Response to Plaintiff's Objections on June 10, 2009. Clerk's No. 120. The Court has not received a timely reply to Defendants' response and the matter is, therefore, fully submitted.

## I. PROCEDURAL BACKGROUND

The present case is one of eight cases pending in this Court that all arise from the investigation, prosecution, and conviction of Terry Harrington ("Harrington") and Curtis McGhee ("McGhee") for the 1977 murder of John Schweer. In 2003, the Iowa Supreme Court vacated Harrington's first degree murder conviction for the failure of the prosecution to turn over exculpatory evidence. Shortly thereafter, the Pottawattamie County Attorney, Matthew Wilber ("Wilber"), launched a renewed investigation into Schweer's murder. After reviewing all the evidence, Wilber held a press conference and issued both oral and print statements indicating, amongst other things, that while he be-lieved that Harrington had murdered Schweer, there was not sufficient evidence to obtain another conviction of him.[1]

On November 13, 2003, Harrington filed an Amended Complaint in the present action against Wilber and Pottawattamie County, Iowa, asserting that Wilber's statements defamed him.[2] On March 25, 2005 and on May 4, 2005, respectively, Harrington and McGhee filed lawsuits against law enforcement officers, prosecutors, and city and county entities, alleging various state law and civil rights violations. Case Nos. 4:05–cv–178 (*Harrington v. County of Pottawattamie, et al.*); 4:05–cv–255 (*McGhee v. Pottawattamie County, et al.*). McGhee's May 4, 2005 Complaint asserted a claim for defamation against Wilber similar to the one filed by Harrington in 2003. In 2007 and 2008, five related cases were filed by insurers against the city and county defendants. *See* Case Nos. 4:07–cv–135 (*Gulf Underwriters Ins. Co. v. City of Council Bluffs*); 1:07–cv–18 (*Genesis Ins. Co. v. City of Council Bluffs*); 1:07–cv–21 (*Chicago Ins. Co. v. City of Council Bluffs*); 1:07–cv–24 (*Columbia Cas. Co. v. City of Council Bluffs*); 4:08–cv–455 (*Allianz Global Risks U.S. Ins. v. Pottawattamie County*).

In late 2004, Wilber moved for summary judgment on Harrington's claim of defamation, claiming, amongst other things, that as a County Attorney, he was entitled to immunity from liability under the Iowa Municipal Tort Claims Act ("IMTCA"), which provides that municipalities are statutorily immune from liability for claims based on "the exercise or performance or the failure to exercise or perform a discre-

---

1. Wilber's statement addressed McGhee's case as well. McGhee entered into an agreement whereby he entered an Alford plea in exchange for a sentence of twenty-five years. Because McGhee had already served more than twenty-five years in prison, he was released from custody.

2. Because Harrington's defamation claim names both Matthew Wilber and Pottawattamie County as defendants, references to Wilber throughout this order are, where appropriate, deemed references to the County defendant as well.

tionary function or duty ... whether or not the discretion is abused." Iowa Code § 670.4(3). In an order dated January 27, 2005 353 F.Supp.2d 1033 (S.D.Iowa 2005), this Court denied Wilber's motion for summary judgment, concluding that while he had adequately shown that issuing statements about the Harrington and McGhee cases was a discretionary function, he had failed to demonstrate that such conduct was of the type intended to be shielded from liability by the IMTCA. *See* Clerk's No. 29. Namely, the Court found that Wilber had failed to demonstrate that his "decision [to comment on the guilt or innocence of Plaintiff] was a judgment call driven by social, economic, or political concerns." *Id.* at 21.

On February 23, 2007, the Court issued a lengthy order granting in part and denying in part motions for summary judgment made by the various defendants in Harrington's and McGhee's civil rights cases. *See* Case No. 4:05–cv–178, Clerk's No. 174; Case No. 4:05–cv–255, Clerk's No. 183. In its ruling, the Court rejected, as it did in Harrington's defamation case, Wilber's claim that his allegedly defamatory statements were protected by a qualified privilege under the IMTCA. *See* Case No. 4:05–cv–178, Clerk's No. 174 at 101–02. The Court also addressed an argument by Richter and Hrvol, the prosecutors in 1977–78, that they were entitled to immunity under the Iowa Tort Claims Act ("ITCA"), Iowa Code § 669.1 et seq. *See id.* at 97–98. Harrington and McGhee both urged that the ITCA was inapplicable to protect any of the prosecutors in the actions, given that Wilber had previously argued he was entitled to immunity under the IMTCA. The Court rejected Harrington and McGhee's argument in this regard:

> The question of whether a state law claim against a government agent is protected by the IMTCA or the ITCA is one of state law, however, and Plaintiffs offer no authority whatsoever for the

proposition that because this Court previously evaluated *Wilber's* liability under the IMTCA, notably *because that is the issue that the parties submitted to the Court,* that the Court is somehow forever barred from considering the applicability of other provisions of state law. Indeed, though the issue has not been argued, it is entirely possible that Defendants' prosecutorial duties are covered by the ITCA, but other duties and functions of the Defendants are covered instead by the IMTCA.

*See* 4:05–cv–178, Clerk's No. 174 at 97–98.

An interlocutory appeal quickly followed the Court's February 23, 2007 Order. On November 21, 2008, the Eighth Circuit Court of Appeals affirmed the order in part and reversed it in part. With respect to McGhee's defamation claim against Wilber, the appellate court concluded that "Wilber is entitled to sovereign immunity under the ITCA." *McGhee v. Pottawattamie County, Iowa,* 547 F.3d 922, 932 (8th Cir.2008). Specifically, the Eighth Circuit found as follows:

> Wilber appeals the denial of his summary judgment motion on McGhee's defamation claim based on Wilber's sovereign immunity and qualified immunity defenses under the ITCA, an argument Wilber did not make to the district court where he relied instead upon the protections afforded by the IMTCA. The district court held the IMTCA's protection only applied if Wilber's comments were "a judgment call driven by social, economic, or political concerns" and found they were not.
>
> The ITCA defines a state employee, for purposes of the act, as including any "persons acting on behalf of the state ... in any official capacity, temporarily or permanently in the service of the state of Iowa." Iowa Code § 669.2(4). Thus, for purposes of the ITCA, Wilber

is a state employee when acting in his official capacity as County Attorney. We find no language within the ITCA which would restrict Wilber's immunity under the ITCA solely to prosecutorial acts. Instead, the only restriction is for acts taken in an official capacity. *See id.* Clearly, when Wilber held his press conference and issued his written press release he was acting in his official capacity as County Attorney discussing prosecutions by the state.

McGhee's defamation claim is governed by the ITCA which explicitly bars a claim for defamation arising out of libel or slander. *See* Iowa Code § 669.14(4). Therefore, the district court erred as a matter of law in denying Wilber's motion for summary judgment as to McGhee's defamation claim. This claim must be dismissed.

*Id.*

Numerous of the Eighth Circuit's determinations, though not its conclusion regarding Wilber's immunity under the ITCA, were subsequently appealed to the United States Supreme Court in a petition for writ of certiorari filed on February 18, 2009. *See* Case No. 4:05–cv–255, Clerk's No. 256. On February 20, 2009, the Supreme Court stayed Harrington's and McGhee's civil rights cases (4:05–cv–178; 4:05–cv–255) pending disposition of the petition for writ of certiorari. *See id.* On February 24, 2009, Chief United States Magistrate Judge Thomas Shields entered a case management order staying all related matters, namely the five insurance cases and Harrington's defamation case, pending the Supreme Court's decision on the petition for writ of certiorari. *See* Clerk's No. 106. On April 20, 2009, the United States Supreme Court granted the petition for writ of certiorari in the Harrington and McGhee civil rights cases. *See* Clerk's No. 110.

On April 28, 2009, Harrington filed a motion requesting that Judge Shields' stay order be lifted to permit Harrington's defamation case to proceed. *See* Clerk's No. 109. Harrington argued that "[no] legal, equitable, or rationale [sic] reason exists to support the Stay of Proceedings in this case pending resolution of the appeal of the Civil Rights cases in the United States Supreme Court." *Id.* at 9. Wilber filed an opposition to Harrington's motion on May 12, 2009, urging that lifting the stay on Harrington's defamation action would lead to "duplicative, burdensome and unnecessary litigation." Clerk's No. 115 at 2. Wilber further argued that Harrington will not be prejudiced by the continued stay of his defamation case because the claims are barred as a matter of law by the Eighth Circuit's holding that Wilber is entitled to immunity from McGhee's defamation claims (which arose from the very same statements at issue in Harrington's defamation claims) under the ITCA. *Id.* at 5–6. In a Reply filed on May 13, 2009, Harrington suggests that Wilber's claims for immunity under the ITCA are not a given, but that if his "claims for immunity prove to be as strong as suggested[,] there is no reason to have the claims dismissed later rather than sooner." Clerk's No. 116 at 6. Judge Shields held a hearing on Harrington's motion on May 14, 2009. On May 20, 2009, Judge Shields entered an order granting a partial lift of the stay. Clerk's No. 118. Specifically, Judge Shields ruled that any motions to intervene must be filed by June 19, 2009; that any dispositive motions pursuant to the Federal Rules of Civil Procedure must be filed by August 10, 2009; and that resistances and replies to dispositive motions must be filed by September 25 and October 26, 2009, respectively.

## II. STANDARD OF REVIEW

There are two standards for a district court's review of the order of a magistrate

judge. A non-dispositive order may only be reversed if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(a); Fed.R.Civ.P. 72(a). Conversely, if the order concerns a dispositive motion, the district court must review the magistrate judge's decision de novo and "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(a). Because the present matter deals with a non-dispositive matter, the Magistrate Judge's order is subject to a "clearly erroneous or contrary to law" standard of review.

## III. LAW AND ANALYSIS

### A. *Plaintiff's Objection No. 1: "Denial of Motion for Partial Lift of Stay as Requested"*

Harrington contends that a district court must identify a "pressing need" before it stays a case pending the resolution of related proceedings in another forum. Clerk's No. 119. Once such a "pressing need" has been identified, Harrington asserts, the Court must then balance the interests favoring a stay against those interests frustrated by a stay before determining whether a stay is appropriate. *Id.* Harrington contends that the Magistrate Judge erred in *sua sponte* staying his defamation case in the first instance, because he never identified a "pressing need" for the stay, nor did he ever attempt to balance the interests for and against the stay. Harrington further argues that the only justification given by the Magistrate Judge for maintaining the stay "is a presumption that either Harrington or the Defendants will appeal this Court's ruling on Defendants' dispositive motions prior to trial." *Id.* at 2.

Harrington cites *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413 (Fed.Cir.1997) in support of his contention that the Magistrate Judge was obligated to identify a "pressing need" before staying his defamation case. The "pressing need" requirement identified in *Cherokee Nation,* however, is only applicable to cases where a decision is being made to "stay proceedings indefinitely." [3] *Id.* at 1416 (citing Justice Cardozo's instruction in *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936), that "a trial court abuses its discretion by issuing 'a stay of indefinite duration in the absence of a pressing need'"). In the present case, the stay order regarding Harrington's defamation case is only effective until such time as the Supreme Court renders a decision on Harrington's and McGhee's civil rights cases. Since those cases are to be heard in the 2009–10 term, a definitive ruling can be expected within the next year, but in no event later than the end of the Court's term in June 2010.

Since a stay of less than a year is not "indefinite," the Magistrate Judge was not obligated to identify a "pressing need" for staying Harrington's defamation case. While the Court is sympathetic to the extensive delays that Harrington has faced in litigating his claims, the Magistrate Judge's stay order was an appropriate exercise of the Court's inherent power to control its docket. *See Lunde v. Helms,* 898 F.2d 1343, 1345 (8th Cir.1990) (recognizing that stays for purposes of docket management are within the inherent authority of district courts and that reviews of such stays are only appropriate where the stay "amounts to a dismissal of the underlying suit" or when it is an "indefinite stay order that unreasonably delays a

---

**3.** Indeed, the *Cherokee Nation* court explicitly recognized the general rule that "[t]he power of a federal trial court to stay its proceedings, even for an indefinite period of time, is beyond question." 124 F.3d at 1416.

plaintiff's right to have his ... case heard").

In fact, the Court is somewhat puzzled by Harrington's objection. Harrington specifically requested that the stay order be lifted so that his defamation case against Wilber could proceed to trial. The question of *whether* this case can proceed to trial at all, however, can only be determined after consideration of any and all dispositive motions. Since the Magistrate Judge lifted the stay to allow this necessary step in the proceedings, there would have been little, if any, practical difference had the Magistrate Judge lifted the stay in its entirety.[4] Moreover, this Court concurs with the Magistrate Judge's decision to stay the case initially, as well as with his decision to partially lift the stay for the purpose of dealing with dispositive motions. First, it is entirely possible that Wilber's anticipated dispositive motions will conclude Harrington's defamation suit. Lifting the stay for the purpose of determining if the case may proceed at all is an appropriate and reasonable course of action at this juncture. Second, permitting Harrington's defamation trial to proceed before the contours of the civil rights cases are fully determined would likely result in a significant and duplicative expenditure of time and resources by the Court, its staff, the parties, the attorneys, the witnesses, and lay people called as jurors in the case. Accordingly, the Court cannot say that the Magistrate Judge's decision to issue the stay in the first instance or his later decision to only partially lift the stay was "erroneous or contrary to law." Harrington's objection is overruled.

B. *Plaintiff's Objection No. 2: "Lifting of Stay for Filing of Dispositive Motions Only"*

Harrington's next objection is that the Magistrate Judge erred by lifting the stay only for filing dispositive motions, without permitting Harrington discovery on the issues expected to be raised in the dispositive motions, i.e., discovery related to the question of whether Wilber is a "state employee" for purposes of the ITCA. Specifically, Harrington contends that he will be denied due process and a fair hearing if he is not permitted discovery. Harrington argues that Wilber previously answered discovery questions indicating that he was a County employee, not a state employee, and that Wilber "will necessarily have to repudiate or attempt to amend or explain such judicial admissions in their anticipated dispositive motions." Clerk's No. 119 at 5.

■ Having reviewed Harrington's discovery requests, the Court questions whether much of the information sought is germane to the issue of whether Wilber is

4. Harrington's counsel seemingly acknowledged that the first step in proceeding with the defamation case is to address Wilber's request for summary judgment based on the Eighth Circuit's determination that Wilber was immune from McGhee's defamation claim under the ITCA. The following colloquy between Judge Shields and Harrington's counsel occurred during the May 14, 2009 hearing:

Q: [L]et's assume that I grant the motion to lift the stay in the partial stay. Aren't we then going to see another motion for summary judgment based upon the same rationale as the Eighth Circuit's decision in McGhee?

A: Yes.

Q: And aren't we then going to see another appeal to the 8th Circuit? Somebody is going to be disappointed.

A: And as somebody is disappointed with every case, but simply doesn't justify delaying if that is the inevitable. There is no point in delaying it. It seems counterintuitive to say, well, these motions are requesting to be filed, so let's just put it all off so that they can be filed later. There is no reasons for that summary judgment motion not to proceed now. There simply is no—to me any way, viable reason that says, well, let's just put it all off until later.

Hr'g Tr. at 6.

entitled to immunity under the ITCA, particularly in light of the clear statement of the Eighth Circuit on the topic and this Court's own statement that "it is entirely possible that Defendants' prosecutorial duties are covered by the ITCA, but other duties and functions of the Defendants are covered instead by the IMTCA." [5] *See* 4:05–cv–178, Clerk's No. 174 at 97–98. For example, Harrington seeks to discover whether the State of Iowa acknowledges that Wilber was a state employee under the ITCA at the time of the alleged defamation. The State of Iowa's acknowledgment, however, bears little relevance to the question of whether Wilber was, under the statutory definition, an "employee of the state" entitled to the statutory protection of the ITCA. *See* Iowa Code § 669.2(4). Other proffered discovery requests appear to conflate the issue of statutory entitlement to immunity with the issue of entitlement to indemnification.[6] Regardless, the Court declines to rule on Plaintiff's requested discovery because the issue was not properly raised before the Magistrate Judge. Harrington did not request discovery in his pleadings before the Magistrate Judge. Likewise, while discovery was discussed in a fairly general fashion during the hearing on Harrington's motion, no formal requests for discovery were proffered. As this Court has stated previously, " '[r]eview of a Magistrate's ruling before the District Court does not permit consideration of issues not raised before the Magistrate' " because the " 'magistrate's decision should not be disturbed on the basis of arguments not presented to him.' " *See* Clerk's No. 46 at 6 (quoting *Jesselson v. Outlet Assoc. of Williamsburg, Ltd. P'ship*, 784 F.Supp. 1223, 1228 (E.D.Va.1991)). If Harrington

desires discovery beyond that already received, he must make an appropriate motion before the Magistrate Judge. Accordingly, Harrington's objection is overruled.

### C. *Plaintiff's Objection No. 3: "Denial of Vacating Order to Consolidate"*

In his motion to partially lift the stay, Harrington additionally moved to vacate Judge Shields' Consolidation Order, which consolidated Harrington's defamation claims against Wilber with McGhee's defamation claims against Wilber. As noted herein, the Eighth Circuit Court of Appeals dismissed McGhee's defamation claims, finding that Wilber was immune from liability under the ITCA. Harrington argues that it is improper for his defamation case to remain consolidated with "another case that no longer exists" and that "continued consolidation will lead to inefficiency, inconvenience, and unfair prejudice." Clerk's No. 109 at 9. Wilber did not specifically resist this portion of Harrington's motion, and Judge Shields merely stated in his ruling that "[v]acation of the consolidation order is not warranted or necessary at the present time." Clerk's No. 118 at 5.

The Magistrate Judge's order consolidating Harrington's defamation claim with McGhee's defamation claim was appropriate in the first instance. In light of the Eighth Circuit's mandate that McGhee's defamation claim be dismissed, there is no further practical effect to the consolidation order. That is, a consolidation with a case that is no longer pending equates to no consolidation at all. The Court cannot say that the Magistrate Judge's ruling in this regard is clearly erroneous or contrary to law. Harrington's objection is overruled.

---

5. The Court, of course, recognizes that even minimally relevant evidence may nonetheless be discoverable.

6. During a pretrial conference with Judge Shields, Harrington's counsel discussed the need for additional discovery to determine indemnification issues. *See* Clerk's No. 115–2 (Pretrial Hr'g Tr.).

D. *Plaintiff's Objection No. 4: "Providing Defendants with an Additional 80 Days to File Dispositive Motions is Unnecessary"*

██ Harrington next argues that, because Wilber's counsel indicated at hearing that they were nearly prepared to file a dispositive motion regarding immunity under the ITCA, the Magistrate Judge's grant of an additional 80 days to file dispositive motions was unnecessary. Nowhere in his objection does Plaintiff indicate that the Magistrate Judge's determination in this regard was erroneous or contrary to law. Indeed, the Court finds that the schedule imposed was reasonable to permit time for intervention by interested third parties and, additionally, was a reasonable exercise of the Magistrate Judge's discretion. The objection is, therefore, overruled.

## IV. CONCLUSION

For the reasons stated herein, Harrington's "Objections to Magistrate Judge's Orders Entered on 5/20/09" (Clerk's No. 119) are overruled.

IT IS SO ORDERED.