**Terry HARRINGTON, Plaintiff,**

v.

**Matthew D. WILBER and Pottawattamie County, Iowa, Defendants.**

**No. 4:03–cv–90616 RP–TJS.**

United States District Court, S.D. Iowa, Central Division.

Nov. 9, 2009.

Stephen Dillard Davis, William H. Jones, Canel, Davis & King, Chicago, IL, Thomas P. Frerichs, Frerichs Law Office PC, Waterloo, IA, Larissa A. McCalla, J. Douglas McCalla, Mel C. Orchard, Gerry L. Spence, Spence Shockey & McCalla, Jackson, WY, Alan O. Olson, Olson Law Office PC, Des Moines, IA, for Plaintiff.

Michael A. Sciortino, City of Council Bluffs Legal Dept., Margaret J. Reyes, Pottawattamie County Attorneys Office, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Council Bluffs, IA, Lori E. Lightfoot, Vincent J. Connelly, Zaldwaynaka Scott, Mayer Brown LLP, Chicago, IL, for Defendants.

Anne F. Danaher, Kansas City, IA, pro se.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendants', Matthew Wilber ("Wilber") and Pottawattamie County, Iowa ("Pottawattamie County"), Motion for Summary Judgment on Harrington's Defamation Claim, filed August 10, 2009. Clerk's No. 128. Terry Harrington ("Plaintiff" or "Harrington") filed a Resistance to the Motion on September 25, 2009. Clerk's No. 129. Defendants filed a Reply on October 26, 2009.[1] Clerk's No. 131. In his resistance, Plaintiff requests oral argument. Clerk's No. 129. The Court, however, does not believe that oral argument will substantially aid it in resolving the present motion. Accordingly, Plaintiff's request for oral argument is denied and the matter is fully submitted.

---

1. Defendants contemporaneously filed a Motion to File Overlength Brief in Support of Their Motion for Summary Judgment. Clerk's No. 130. The Court hereby grants the Defendants' request to file the overlength brief, which appears in the docket as an attachment to the Motion.

## I. PROCEDURAL BACKGROUND

This case has an extensive procedural background that has been articulated repeatedly by the Court in past orders. In short summary, the present case is one of numerous cases pending in this Court that all arise from the investigation, prosecution, and conviction of Harrington and Curtis McGhee ("McGhee") for the 1977 murder of John Schweer. In 2003, the Iowa Supreme Court vacated Harrington's first degree murder conviction for the failure of the prosecution to turn over exculpatory evidence. Shortly thereafter, Wilber, the Pottawattamie County Attorney, launched a renewed investigation into Schweer's murder. After reviewing all the evidence, Wilber held a press conference and issued both oral and print statements indicating, amongst other things, that while he believed Harrington had murdered Schweer, there was not sufficient evidence to obtain another conviction of him.[2]

On November 13, 2003, Harrington filed an Amended Complaint in the present action against Wilber and Pottawattamie County, asserting that Wilber's statements at the press conference defamed him.[3] On March 25, 2005 and on May 4, 2005, respectively, Harrington and McGhee filed lawsuits against law enforcement officers, prosecutors, and city and county entities, alleging various state law and civil rights violations. Case Nos. 4:05–cv–178 (*Harrington v. County of Pottawattamie, et al.*); 4:05–cv–255 (*McGhee v. Pottawattamie County, et al.*). McGhee's May 4, 2005 Complaint asserted a claim for defamation against Wilber nearly identical to that filed by Harrington in 2003, i.e.,

McGhee claimed that Wilber's oral and print statements at the press conference defamed him.

In late 2004, Wilber moved for summary judgment on Harrington's claim of defamation, claiming, amongst other things, that as County Attorney, he was entitled to immunity from liability under the Iowa Municipal Tort Claims Act ("IMTCA"), which provides that municipalities are statutorily immune from liability for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion is abused." Iowa Code § 670.4(3). In an order dated January 27, 2005, 353 F.Supp.2d 1033 (S.D.Iowa.2005), the Court denied Wilber's motion for summary judgment, concluding that while he had adequately shown that issuing statements about the Harrington and McGhee cases was a discretionary function, he had failed to demonstrate that such conduct was of the type intended to be shielded from liability by the IMTCA. *See* Clerk's No. 29. Specifically, the Court found that Wilber had failed to demonstrate that his "decision [to comment on the guilt or innocence of Plaintiff] was a judgment call driven by social, economic, or political concerns." *Id.* at 21. The Court reiterated and incorporated these findings in its February 23, 2007 ruling denying Wilber's assertion that he was entitled to a qualified privilege on McGhee's defamation claim. *See* Case No. 4:05–cv–178, Clerk's No. 174; Case No. 4:05–cv–255, Clerk's No. 183.

In its February 23, 2007 ruling, the Court also addressed an argument by David Richter ("Richter") and Joseph

---

**2.** Wilber's statement addressed McGhee's case as well. McGhee made an agreement whereby he entered an Alford plea in exchange for a sentence of twenty-five years. Because McGhee had already served more than twenty-five years in prison, he was released from custody.

**3.** Because Harrington's defamation claim names both Wilber and Pottawattamie County as defendants, references to Wilber throughout this order are, where appropriate, deemed references to the County defendant as well.

Hrvol ("Hrvol"), the prosecutors in 1977–78, that they were entitled to immunity from Harrington's and McGhee's state law claims under the Iowa Tort Claims Act ("ITCA"), Iowa Code § 669.1 et seq. *See id.* at 97–98. Harrington and McGhee both urged that the ITCA was inapplicable to protect any of the prosecutors in the actions, given that Wilber had previously argued he was entitled to immunity under the IMTCA. The Court rejected Harrington's and McGhee's argument in this regard, finding that "it is entirely possible that Defendants' prosecutorial duties are covered by the ITCA, but other duties and functions of the Defendants are covered instead by the IMTCA." *See* Case No. 4:05–cv–178, Clerk's No. 174 at 97–98.

An interlocutory appeal quickly followed the Court's February 23, 2007 Order. While the Eighth Circuit Court of Appeals recognized that Wilber had only claimed immunity under the IMTCA before the district court, it nonetheless found that "Wilber is entitled to sovereign immunity under the ITCA." *McGhee v. Pottawattamie County, Iowa,* 547 F.3d 922, 932 (8th Cir.2008). Specifically, the Eighth Circuit found as follows:

> Wilber appeals the denial of his summary judgment motion on McGhee's defamation claim based on Wilber's sovereign immunity and qualified immunity defenses under the ITCA, an argument Wilber did not make to the district court where he relied instead upon the protections afforded by the IMTCA. The district court held the IMTCA's protection only applied if Wilber's comments were "a judgment call driven by social, economic, or political concerns" and found they were not.
>
> The ITCA defines a state employee, for purposes of the act, as including any "persons acting on behalf of the state ... in any official capacity, temporarily or permanently in the service of the state of Iowa." Iowa Code § 669.2(4).
>
> Thus, for purposes of the ITCA, Wilber is a state employee when acting in his official capacity as County Attorney. We find no language within the ITCA which would restrict Wilber's immunity under the ITCA solely to prosecutorial acts. Instead, the only restriction is for acts taken in an official capacity. *See id.* Clearly, when Wilber held his press conference and issued his written press release he was acting in his official capacity as County Attorney discussing prosecutions by the state.
>
> McGhee's defamation claim is governed by the ITCA which explicitly bars a claim for defamation arising out of libel or slander. *See* Iowa Code § 669.14(4). Therefore, the district court erred as a matter of law in denying Wilber's motion for summary judgment as to McGhee's defamation claim. This claim must be dismissed.

*Id.* The Eighth Circuit explicitly noted that it was not reviewing the district court's denial of Wilber's summary judgment motion on Harrington's defamation claim because "Wilber did not appeal this decision." *Id.* at 928 n. 5.

On May 20, 2009, Chief United States Magistrate Judge Shields entered a scheduling order with regard to the filing of dispositive motions in the present case. Clerk's No. 118. After the Plaintiff was permitted to conduct limited additional discovery on the matter now raised in Defendants' Motion for Summary Judgment, the parties adhered to Judge Shields' scheduling order in filing the pleadings now at issue. In essence, Defendants' Motion for Summary contends that, in light of the Eighth Circuit's conclusion that Wilber is protected from McGhee's defamation claim by the ITCA, this Court must find that the ITCA also protects Wilber and, by extension, Pottawattamie County, from Harrington's defamation claim.

## II. STANDARD OF REVIEW

█ Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not " 'to cut litigants off from their right of trial by jury if they really have issues to try,' " *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

█ The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather it only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.").

It is the unusual case where the party shouldering the burden of proof prevails on a summary judgment motion. *See Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir.1998) ("Summary judgments in favor of parties who have the burden of proof are rare, and rightly so.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. LAW AND ANALYSIS

Defendants correctly point out that Harrington's defamation claim against Wilber "is based on the very same press conference and release" that formed the basis of McGhee's defamation claim against Wilber. Accordingly, Defendants contend that the Eighth Circuit's ruling in the McGhee case "is both the law of [the Harrington] case and binding precedent requiring that the court grant summary judgment in favor of Wilber." Defs.' Mot. at 2. Plaintiff makes numerous arguments in resistance and urges the Court to deny Defendants' request for summary judgment.

### A. *Wilber's Status as the Pottawattamie County Attorney*

■ Plaintiff first argues that the Court should decline to apply the Eighth Circuit's holding in the McGhee defamation case to Harrington's defamation claim because "it is a conclusively established fact that Wilber was in the course of his employment for Pottawattamie County when he libeled and slandered Harrington."[4] Pl.'s Br. at 6. Plaintiff contends that this "conclusively established" fact differentiates Harrington's case from McGhee's, because "an issue based on such fact was never raised, addressed, considered, or ruled on in *McGhee v. Pottawattamie County*." *Id.* at 9. The Court finds Plaintiff's attempt to distinguish Harrington's case from McGhee's unpersuasive. The Eighth Circuit was clearly cognizant of the fact that Wilber was the Pottawattamie County Attorney, in the employ of Pottawattamie County, when it nonetheless found that Wilber was "a state employee when acting in his official capacity as

4. In support of this proposition, Plaintiff points to the following "admissions" by Defendants: 1) Defendants' Interrogatory responses, wherein they "admit[ted] that defendant Matthew Wilber was in the course of his employment for defendant Pottawattamie County, Iowa, at the time of the acts complained of in plaintiff's complaint" (Pl.'s App. at 4, 6); 2) Wilber's deposition testimony, wherein Wilber stated that he issued the press release "acting as the county attorney for Pottawattamie County" (*id.* at 2); and 3) Defendants' statement, made in support of their request for immunity under the IMTCA, that "[t]he allegedly defamatory comments were made by Mr. Wilber in his official capacity and in the performance of his duties as an elected official, the Pottawattamie County Attorney" (Clerk's No. 15 ¶ 20).

Plaintiff asserts that Rule 36(b) prevents Defendants from denying or amending the asserted "admissions." Federal Rule of Civil Procedure 36, however, is wholly inapplicable to the statements cited by Plaintiff. Rule 36(a) provides that one party may request that another party make admissions about facts, the application of law to facts, or opinions about either, by "serv[ing] ... a written request to admit" Rule 36(b) provides: "A matter *admitted under this rule* is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." (emphasis added). Not one of the statements proffered by Plaintiff was made pursuant to a proper request for admission under Rule 36(a), meaning that the statements are not subject to Rule 36(b) because they were not "admitted under [Rule 36]."

County Attorney." *McGhee*, 547 F.3d at 932. Indeed, the Circuit explicitly recognized that "[Wilber] relied ... upon the protections afforded by the IMTCA" in the proceedings before the district court. *McGhee*, 547 F.3d at 932; *see also* Case No. 4:05–cv–178, Clerk's No. 174 at 102 ("The Court finds no reason to sway from its holding [on Harrington's defamation claim], and incorporates the reasoning contained therein by reference in denying Wilber's claim for summary judgment on McGhee's defamation claim."), *rev'd by McGhee*, 547 F.3d at 932. Since the IMTCA embraces county employees and officers, the Court does not doubt that the Eighth Circuit did, in fact, consider the fact that Wilber was a Pottawattamie County employee at the time of the asserted defamation.

Plaintiff's argument is further undermined by this Court's prior rejection of a contention by both Harrington and McGhee that the IMTCA and the ITCA are mutually exclusive:

> [Harrington and McGhee] argue that Defendants "have talked out of both sides of their mouth" on the issue of whether Hrvol and Richter are protected by the ITCA or the IMTCA, by virtue of the fact that this Court previously analyzed Wilber's liability for defamation against Harrington under the IMTCA. They point out that it is "established as the law of this case ... that when analyzing whether sovereign immunity precludes any of the Plaintiff's claims, we look to the statutory language of the Iowa Municipal Tort Claims Act, not the Iowa Tort Claims Act." Harrington's Resistance at 105. The question of whether a state law claim against a government agent is protected by the IMTCA or the ITCA is one of state law, however, and Plaintiffs offer no authority whatsoever for the proposition that because this Court previously evaluated *Wilber's* liability under

the IMTCA, notably *because that is the issue that the parties submitted to the Court,* that the Court is somehow forever barred from considering the applicability of other provisions of state law. Indeed, though the issue has not been argued, it is entirely possible that Defendants' prosecutorial duties are covered by the ITCA, but other duties and functions of the Defendants are covered instead by the IMTCA.

Case No. 4:05–cv–178, Clerk's No. 174 at 97–98. In fact, Harrington "acknowledges that a person under certain circumstances could be in the joint employment of the state and a county." Pl.'s Br. at 9. Harrington urges, however, that there is no case law supporting a conclusion that,

> where one status of joint employment makes the person and his governmental employer statutorily immune from suit for the person's torts and the other status of joint employment makes the person and his governmental employer liable for the same torts committed by the same person, the person and governmental entity who are statutorily subject to liability somehow absorb the immunity of the employee's other joint employer.

Pl.'s Br. at 9. While the Court agrees with Harrington that there is no case law directly addressing this point, the fact remains that the Eighth Circuit was well aware that this Court had determined that Wilber *was* subject to suit for McGhee's defamation claim under the IMTCA when it made its own determination that Wilber *was not* subject to suit for McGhee's defamation claim under the ITCA. Since the Eighth Circuit did not reverse this Court's conclusion that Wilber was liable for defamation under the IMTCA, yet still ordered McGhee's defamation claim dismissed under the ITCA, the Court is hard pressed to reach a different result in this case.

## B. *Immunity under Iowa Law*

■ Plaintiff next argues that Defendants are incorrect in their assertion that the Eighth Circuit's sovereign immunity determination in *McGhee* is "the law of the case" with regard to Harrington's defamation claim. Pl.'s Br. at 11. Plaintiff urges that the Court must find all factors of the issue preclusion doctrine have been satisfied before it can find that the ruling in *McGhee* constitutes the law of Harrington's case. Defendants counter that the issue preclusion doctrine and the law of the case doctrine are not the same, and that it is only the law of the case doctrine that is applicable.

■ The doctrine of issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct.

2161, 2171, 171 L.Ed.2d 155 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "The doctrine prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency." *Little Earth of the United Tribes, Inc. v. Dept. of Hous. & Urban Dev.,* 807 F.2d 1433, 1441 (8th Cir.1986). "Law of the case is a doctrine of discretion, not a command to the courts." *Id.* at 1440. While the Court has some concerns about the applicability of either the issue preclusion doctrine or the law of the case doctrine, given the somewhat unique procedural posture of this case,[5] it need not

5. Harrington's civil rights case (Case No. 4:05–cv–178) was consolidated with McGhee's civil rights case (Case No. 4:05–cv–255) for purposes of discovery only on July 27, 2005. *See* Case No. 4:05–cv–178, Clerk's No. 31. Since McGhee's defamation claim was made in the same Complaint as his civil rights claims, McGhee's defamation case was necessarily consolidated for purposes of discovery with both of the civil rights cases. *See id.* On October 10, 2006, the two civil rights cases were consolidated for trial, and Harrington's defamation case (Case No. 4:03–cv–90616) was consolidated with McGhee's defamation claim for purposes of trial. *See* Case No. 4:05–cv–255, Clerk's No. 103. On January 1, 2009, all three cases were consolidated for purposes of docketing. *See* Case No. 4:03–cv–90616, Clerk's No. 104.

For a claim to be precluded under the doctrine of issue preclusion, the following five elements must be satisfied: 1) the party in the suit sought to be precluded must be the same party as in the first suit, or in privity with that party; 2) the issue sought to be precluded must be the same in both actions; 3) the issue must have actually been litigated in the first action; 4) the issue was determined by a valid

and final judgment in the first action; and 5) the determination must have been essential to the prior judgment. *See Tyus v. Schoemehl,* 93 F.3d 449, 453 (8th Cir.1996), *abrogated on other grounds by Taylor,* 128 S.Ct. at 2161. The law of the case doctrine contains an element similar to the first issue preclusion requirement, i.e., it operates to bar the relitigation of decided issues in "the same case." *Arizona,* 460 U.S. at 618, 103 S.Ct. 1382.

While these cases are partially consolidated, Harrington and McGhee are unquestionably distinct and separate parties and their cases, while arising from the same factual underpinnings, are not the "same case," in the traditional sense of that phrase. Arguably, however, the cases are so closely related and so factually similar, that it would not be blatantly unreasonable to find either that some level of privity might exist for purposes of issue preclusion, or alternatively, that the cases should be treated as being the "same case" for purposes of employing the law of the case doctrine. As noted, however, the Court need not reach these questions in light of its conclusion that the Eighth Circuit's *McGhee* decision is controlling precedent.

reach the issue because it finds that the *McGhee* decision is, in any event, binding precedent on the Court in resolving Harrington's defamation claim.

■ This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are "controlling until overruled by [the Eighth Circuit] en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir.2008); *see also Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."). To determine whether a prior decision has stare decisis effect, the Court must find the following factors: 1) "The decision must constitute a holding of the majority of the court"; 2) the decision must involve an issue of law; 3) similar factual situations must be involved; 4) an issue was actually determined by the decision; and 5) the decision must be from the same court or from a court which the court applying stare decisis owes obedience. *See* 3–30 *Moore's Manual—Federal Practice and Procedure* § 30.11 (2007).

In this case, all of the elements for stare decisis are fulfilled. First, *McGhee* was unanimously decided by a three judge panel of the Eighth Circuit. Second, the panel determined, as a matter of law, that "for purposes of the ITCA, Wilber is a state employee when acting in his official capacity"; that, at the time of the press conference and written press release, Wilber "was acting in his official capacity as County Attorney discussing prosecutions by the state"; and that summary judgment was proper in favor of Wilber on McGhee's defamation claim because it "is governed by the ITCA which explicitly bars a claim for defamation arising out of libel or slander." *McGhee*, 547 F.3d at 932. Third, the factual situation at issue in *McGhee* is virtually identical to the factual situation at issue in Harrington's defamation claim. The allegedly defamatory statements in both cases were made by the same individual in the same press release and during the same news conference. Fourth, the question of Wilber's liability for defamation for statements made in the news conference and press release was actually determined in *McGhee*. Finally, this Court owes obedience to the determinations of the Eighth Circuit.

Despite the well-established principles of the stare decisis doctrine, Harrington maintains that, because this case arises under the Court's diversity jurisdiction, the Court need not follow the Eighth Circuit's rulings "[t]o the extent any statement of purported Iowa law made by the *McGhee* Court differs with the statutory or common law of Iowa." Pl.'s Br. at 13. Specifically, Plaintiff argues that the Court need not follow the Eighth Circuit's *McGhee* ruling because, "[c]ontrary to the *McGhee* Court's statement of purported Iowa law that Wilber as a 'state employee' had *sovereign* immunity[6] barring McGhee's ... claims against him, under Iowa law, state employees do not have, and never have had, *sovereign* immunity barring lawsuits against them for tortious conduct." Pl.'s Br. at 13. Plaintiff offers no support for the contention that this Court is less bound by principles of stare decisis merely because the Eighth Circuit, sitting in diversity with regard to McGhee's defa-

---

**6.** In the "conclusion" portion of the *McGhee* ruling, the Court of Appeals stated, "We reverse the decision of the district court as to McGhee's defamation claim against Wilber, because Wilber is entitled to sovereign immunity under the ITCA for those alleged actions." *McGhee*, 547 F.3d at 933.

mation claim, applied Iowa law in a way with which Plaintiff disagrees. Moreover, the only case law that Plaintiff cites in support of the proposition that the Eighth Circuit's decision is in conflict with Iowa law is a string of cases that all predate the enactment of § 669.23 of the ITCA.[7] *See id.* at 14–15 (citing *Anderson v. Calamus Comm. Sch. Dist.,* 174 N.W.2d 643, 644 (Iowa 1970), *Johnson v. Baker,* 254 Iowa 1077, 120 N.W.2d 502, 505–07 (1963), and *Rhoads v. Perdue,* 239 Iowa 1030, 33 N.W.2d 371, 373 (1948), amongst others). Accordingly, the Court finds Plaintiff's arguments in this regard without merit. *See Dickerson v. Mertz,* 547 N.W.2d 208, 213 (Iowa 1996) (finding that a lower court erred in refusing to extend immunity to a state employee for claims of abuse of process and malicious prosecution on the basis of law that predated the enactment of § 669.23).

Plaintiff next attempts to avoid the application of the stare decisis doctrine to his defamation claim by attacking the reasoning underlying the Eighth Circuit's ruling. In particular, Plaintiff contends that the Court of Appeals improperly relied on *Doe v. Nebraska,* 345 F.3d 593 (8th Cir.2003), in reaching its conclusion that Wilber was entitled to immunity from McGhee's defamation claim and that the Eighth Circuit improperly interpreted Iowa law and the ITCA in concluding that Wilber was immune thereunder. Plaintiff's arguments are unpersuasive. Even if this Court agreed with Plaintiff's strained attempts to discredit the substantive analysis of the Court of Appeals, it would nonetheless be obligated to adhere to the appellate court's

determinations. *See, e.g., Crowley v. United States,* 398 F.3d 1329, 1335 (Fed.Cir. 2005) ("Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court."); *Hart v. Massanari,* 266 F.3d 1155, 1170 (9th Cir.2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue. . . . Binding authority . . . cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, case law on point *is* the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if considers the rule unwise or incorrect.").

### C. *Is the ITCA Unconstitutional?*

Plaintiff finally argues that applying the ITCA to immunize Wilber is patently unconstitutional. Specifically, Plaintiff contends that state employees have never had *sovereign* immunity such that § 669.23 of the ITCA is a grant of *"statutory* immunity to state employees and not a *retention* of state employees' *sovereign* immunity." Pl.'s Br. at 20. Thus, Plaintiff argues, § 669.23 violates the Equal Protection Clause of the United States Constitution and Article I, § 6 of the Iowa Constitution[8] in that it denies to victims of state employees the "fundamental right" of access to the courts for the redress of certain torts, including defamation. *Id.* at 19–28. For purposes of addressing Plaintiff's Equal Protection arguments only, the

---

**7.** Most of the decisions also predate the enactment of the ITCA as a whole, which was codified in 1965. *See Dickerson v. Mertz,* 547 N.W.2d 208, 213 (Iowa 1996). Section 669.23, which provides that "[e]mployees of the state are not personally liable for any claim which is exempted under section 669.14," was enacted in 1984. *Id.*

**8.** Article I, § 6 of the Iowa Constitution provides: "All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

Court will accept as true Plaintiff's contention that the ITCA creates a *statutory* immunity for certain torts by state employees, rather than a sovereign immunity.[9]

The Equal Protection Clauses of both the Iowa and the federal constitution generally require the government to treat similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Varnum v. Brien,* 763 N.W.2d 862, 878 (Iowa 2009) ("Like the Federal Equal Protection Clause found in the Fourteenth Amendment to the United States Constitution, Iowa's constitutional promise of equal protection is essentially a direction that all persons similarly situated should be treated alike." (citations and quotations omitted)). If a classification does not burden a fundamental right or target a suspect class, it will be upheld if it bears a rational relationship to a legitimate end. *See Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir.1998) (en banc).

In *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), the Supreme Court held that "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Thus, as long as a plausible reason exists for the classification, the Court's scrutiny must end. *See id.* at 313–14, 113 S.Ct. 2096. Additionally, under a rational basis standard of review, the statute at issue carries with it a "strong presumption of validity." *Id.* at 314, 113 S.Ct. 2096; *see also City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

*Knapp v. Hanson,* 183 F.3d 786, 789 (8th Cir.1999).

In this case, Plaintiff argues that the Court should apply the more stringent "strict scrutiny" standard to assess § 669.23 because, according to Plaintiff, it burdens the fundamental right of "access to the courts." Pl.'s Br. at 23. The Court rejects Plaintiff's contention that if Wilber is granted immunity under the ITCA, it amounts to Plaintiff being deprived "access to the courts." There is a distinct difference between access to the Courts and the ability to hold someone liable for damages. Plaintiff has had and continues to have meaningful access to the Court. *See Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct.

---

**9.** The Court is far from convinced that Plaintiff's argument in this regard has any merit. Prior to enactment of the ITCA, "the doctrine of governmental immunity was held [by the Iowa Supreme Court] to be applicable to the state and all of its political subdivisions." *Graham v. Worthington,* 259 Iowa 845, 146 N.W.2d 626, 630 (1966). Contrary to Plaintiff's stated position, that immunity *did,* in fact, extend to employees of the state. *See id.* ("And since the state is known to function only by and through its officers, agents or employees, their inclusion within the body of the Act is certainly germane to and not incongruous with the general subject expressed in the title.").

The ITCA was designed, in part, to waive portions of that traditional immunity and

"permit [ ] the state to be sued" to the extent provided in the ITCA's limited waiver. *Id.* at 632 ("It is to us evident the subject Act expressly waives the common law governmental immunity of the State of Iowa as to certain claims for the torts of officers, agents, or employees of the state or of any department, agency, board, bureau or commission of the state, together with certain governmental corporations as defined by the Act."). Thus, the Iowa Supreme Court has explicitly held that the ITCA "does not create a new cause of action. It actually gives recognition to and a remedy for a cause of action already existing by reason of a wrong done but for which redress could not previously be had because of the common law doctrine of governmental immunity." *Id.* at 637.

2174, 135 L.Ed.2d 606 (1996) (stating that the "touchstone" of the right to access the courts articulated in *Bounds v. Smith*, 430 U.S. 817, 823, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), is "meaningful access to the courts"); *Gavin v. Branstad*, 122 F.3d 1081, 1090 (8th Cir.1997) (stating that the inability to pursue certain substantive relief is not "equivalent to the right to bring constitutional grievances to the attention of the courts"); *cf. Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 778 (Iowa 1989) ("Suckow incorrectly assumed that access to the courts is itself a fundamental right...."). He filed a Complaint and, indeed, has repeatedly had the opportunity to litigate various aspects of his claim. What Plaintiff is deprived of by virtue of Wilber's immunity under the ITCA is the ability to hold Wilber liable, *not* the ability to access the courts.

■ Plaintiff makes no argument as to how a fundamental right is implicated by an inability to hold a particular individual liable, and both Iowa and Eighth Circuit law indicate that such a right, if it can be said to exist, is not fundamental. *See Gavin*, 122 F.3d at 1090 (finding a distinction between "the right of access to the courts," which is fundamental, and "the scope of the available substantive relief,") which is not (quoting *Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir.1996)); *Gilleland v. Armstrong Rubber Co.*, 524 N.W.2d 404, 407 (Iowa 1994) ("The right to sue for damages is not itself a fundamental right."). Accordingly, the Court finds that the rational relationship standard is applicable to Plaintiff's equal protection claim.

Plaintiff urges that "[n]o 'legitimate government interests' exists in immunizing state employees from liability for ... libel [or] slander ... if the act was not 'per se' governmental in nature." Pl.'s Br. at 24–25. The primary difficulty inherent in Plaintiff's argument is that it presumes at the outset that Wilber's actions were not "per se governmental in nature," a premise which runs counter to both the Eighth Circuit's conclusion that "when Wilber held his press conference and issued his written press release he was acting in his official capacity as County Attorney discussing prosecutions by the state" and its conclusion that "Wilber is a state employee [under the ITCA] when acting in his official capacity as County Attorney." *McGhee*, 547 F.3d at 932. Hence, for the Court to determine that Plaintiff's equal protection rights are violated by the application of § 669.23 to his case, it would necessarily have to agree with Plaintiff's apparent proposition that Wilber was granted immunity under the ITCA as against McGhee's defamation claim for acts that were not "governmental per se in nature." For the Court to do, it would have to conclude that the Eighth Circuit's interpretation of Wilber's "state employee" status under Iowa law is incorrect and that the Court of Appeals improperly extended immunity to Wilber under the ITCA. Such a conclusion is one this Court is not empowered to make under the doctrine of stare decisis.

■ Moreover, the Court is confident that § 669.23 bears a rational relationship to a legitimate governmental interest. Namely, the State of Iowa maintains a legitimate and reasonable interest in protecting persons working under its auspices or on its behalf from being subjected to liability for certain torts that may occur in the performance of service to the state. Such immunity, as Defendants point out, promotes a variety of state interests. For example, protecting persons working as state employees from liability for certain torts increases the likelihood that the state will be able to attract talented workers and increases the chances that employees will perform their duties more efficiently be-

cause they will not be constrained by a fear of personal liability.

Plaintiff recognizes these legitimate governmental interests when he states that "[t]he purpose of any immunity set forth in the ITCA is to protect the State of Iowa from liability against certain torts and to protect the state's employees from such liability when they perform acts which are essential to the functioning of the state government." Pl.'s Br. at 26–27. Plaintiff argues, however, that this rationale is not reasonably related to providing immunity to state employees for certain torts because, in this case, the State of Iowa is not a party, has not been requested to provide indemnity and, thus, "has no interest in this case." *Id.* Plaintiff's argument ignores the second clause of his own stated purpose for the ITCA, "to protect the state's employees from such liability when they perform acts which are essential to the functioning of the state government." Indeed, there can be little doubt that, whether or not it is subject to financial liability for a claim against a state employee, the State of Iowa nonetheless has a legitimate interest in ensuring that its employees can freely perform tasks essential to its functioning without fear of personal liability. Since County Attorneys act as the public voice of the State for criminal prosecutions brought in its name, the State's legitimate interest is furthered by providing immunity to them for certain torts that may arise in the performance of their duties for the State.

### D. *Pottawattamie County's Liability*

 Pottawattamie County argues that, if Harrington's defamation claim against Wilber is dismissed, then the defamation claim against Pottawattamie County must also be dismissed. Plaintiff counters that this Court "ruled adversely to [ ] Pottawattamie County's claim for Summary Judgment against McGhee's defamation claim" and that the Court of Appeals "affirmed this Court in that respect." Pl.'s Br. at 9–10. Plaintiff further contends that, even if Wilber was acting as a State employee at the time of his allegedly defamatory statements, it is also "conclusively established" that Wilber was *also* acting as a County employee. Thus, Plaintiff argues, Pottawattamie County is still liable even though Wilber is immune from liability under the ITCA.

Plaintiff's contention that the Eighth Circuit "affirmed" this Court's denial of summary judgment to Pottawattamie County on McGhee's defamation claim is patently incorrect. In Count 23 of McGhee's Complaint, he asserted a claim for defamation against Wilber. Case No. 4:05–cv–255, Clerk's No. 1 at 66–67. In Count 30, McGhee claimed, not that Pottawattamie County was independently liable for Wilber's asserted defamation, but that Pottawattamie County was obligated to provide indemnity for all claims against Wilber. *Id.* at 73. Accordingly, neither this Court nor the Court of Appeals ever addressed the question of Pottawattamie County's liability for defamation against McGhee because McGhee never asserted such liability.

In its February 23, 2007 Order, this Court did, however, address the issue now presented in a slightly different factual context. The Court found that Wilber's 1977 counterparts, Richter and Hrvol, were immune for liability under the ITCA for certain acts taken during their prosecution of McGhee. *See* Case No. 4:05–cv–255, Clerk's No. 183 at 90 ("[T]he Court is convinced that Iowa courts would find a prosecutor acting to uphold the state's criminal laws to be protected by the ITCA. In upholding the State of Iowa's prohibition against murder, it is clear that a county attorney represents first and foremost the interests of the state, such that they could be deemed actors under the

ITCA."). The Court went on to find that Pottawattamie County could not be held independently liable for acts taken by Richter and Hrvol that were "clearly within the scope of their duties as prosecutors *for the State.*" *Id.* at 104–05 ("[T]he Court cannot harmonize the lack of liability of Richter and Hrvol with a decision that the County could be liable for such acts."). The Court finds its prior analysis equally determinative on the issue in this case and incorporates the reasoning and analysis from the February 23, 2007 Order by reference.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to File Overlength Brief (Clerk's No. 130) and Defendants' Motion for Summary Judgment (Clerk's No. 128) are GRANTED. Plaintiff's defamation claim is hereby DISMISSED as against both Wilber and Pottawattamie County.

IT IS SO ORDERED.