**Terry HARRINGTON and Curtis W. McGhee, Jr., Plaintiffs,**

**v.**

**CITY OF COUNCIL BLUFFS, IOWA, Daniel C. Larsen, in his individual and official capacities, and Lyle W. Brown, in his individual and official capacities, Defendants.**

Nos. 4:03–cv–90616, 4:05–cv–00178, 4:05–cv–00255.

United States District Court, S.D. Iowa, Central Division.

Oct. 26, 2012.

---

Stephen Dillard Davis, Steve Davis Law PC, Oak Brook, IL, Thomas P. Frerichs, Frerichs Law Office, Waterloo, IA, William H. Jones, Canel Davis & King, Chicago, IL, Larissa A. McCalla, Spence Shockey & McCalla, J. Douglas McCalla, Spence Law Firm, Mel C. Orchard, Gerald L. Spence, The Spence Law Firm LLC, Jackson, WY, Brandon Adams, for Plaintiffs.

David Stephen Baker, Fisher Patterson Sayler & Smith LLP, Overland Park, KS, Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Michael A. Sciortino, Council Bluffs City Attorneys, Council Bluffs, IA, for Defendants.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court are the following motions by Curtis W. McGhee, Jr. ("McGhee") and Terry Harrington[1] ("Harrington") (collectively "Plaintiffs"): (1) Motion Requesting Judicial Notice of Materiality of Gates Reports and Their Nondisclosure, filed August 22, 2012 (Clerk's No. 271); (2) Motion That the Non-disclosure of Gates Reports Admissible Evidence under FRE 104, also filed August 22, 2012 (Clerk's No. 272); and (3) Motion for Judicial Notice of How McGhee and Harrington Obtained Release From Prison (Clerk's No. 275). The City of Council Bluffs, Iowa, Daniel Larsen, and Lyle Brown (collectively "Defendants") filed a Resistance to these Motions on September 10, 2012. Clerk's No. 291. Plaintiffs filed Replies on September 20, 2012. Clerk's No. 293. The matters are fully submitted.

## I. MOTIONS

### A. *Judicial Notice of the Gates Reports*

Plaintiffs move that the Court take judicial notice of the following two facts: (1)

---

1. Though filed by McGhee, Harrington was sought and was granted leave to join in the motions. *See* Clerk's Nos. 276, 303.

the Gates reports were material, exculpatory evidence; and (2) Harrington and McGhee did not know of these reports when they stood trial in 1978. *See* Clerk's No. 271–1 at 3. Plaintiff argues that taking judicial notice of these facts is proper because courts "may take judicial notice of judicial opinions and public records." *See id.* at 1 (citing *Stutzka v. McCarville*, 420 F.3d 757, 761 n. 2 (8th Cir.2005)). Thus, Plaintiff urges the Court to take judicial notice of *Harrington v. State*, 659 N.W.2d 509 (Iowa 2003), where the Iowa Supreme Court stated as follows:

> Under the circumstances presented by the record before us, we cannot be confident that the result of Harrington's murder trial would have been the same had the exculpatory information been made available to him. We hold, therefore, that Harrington's due process right to a fair trial was violated by the State's failure to produce the police reports documenting their investigation of an alternative suspect in Schweer's murder.

*Id.* at 525. Although McGhee was not a party to *Harrington v. State*, he maintains that he "suffered the same due process violations as Harrington [and that] the State never contended otherwise." *See* Clerk's No. 271–1 at 2.

Defendants raise four arguments in resistance to Plaintiff's Motion: (1) whether the Gates reports were material and whether they were disclosed to Harrington and McGhee are non-adjudicative facts; (2) taking judicial notice of these two facts will violate the law of the case; (3) the facts at issue are irrelevant and unfairly prejudicial; and (4) these facts relate to "*Brady* violations ... for which [Defen-

dants] are immune."[2] *See* Clerk's No. 291 at 3–7.

■■■ Defendants' arguments are unavailing. First, adjudicative facts are " 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their businesses.' " *Qualley v. Clo–Tex Int'l Inc.*, 212 F.3d 1123, 1128 (8th Cir.2000). Though Defendants claim that the proposed facts are "nonadjudicative," in that they do not relate to the Defendants, Plaintiffs correctly counter this argument when they point out that the facts are "adjudicative in nature because [they] relate to what happened to plaintiff themselves. It makes no sense to consume court time to prove these matters to a jury when they have already been litigated to an indisputable conclusion." Pl.'s Reply at 2.

■■■ Second, Defendants are incorrect in their assertion that taking judicial notice of these facts will violate the law of the case. Defendants claim that this Court previously determined that the police Defendants disclosed all allegedly exculpatory information to the prosecutors. *See* Defs.' Resistance at 5 (citing *McGhee v. Pottawattamie Cnty.*, 475 F.Supp.2d 862, 913 (S.D.Iowa 2007) and *Harrington v. Wilber*, 670 F.Supp.2d 958, 966 (S.D.Iowa 2009)). The Court made no such independent factual determination. Rather, it found that Plaintiffs had repeatedly alleged in their Complaints that the prosecutors were aware of all exculpatory information.[3] *McGhee*, 475 F.Supp.2d at 913. Even had the Court made such a finding, it was in the context of a motion for judgment on

---

2. A close look at Defendants' arguments reveals that they all rely predominantly on the same underlying objection—Defendants surrendered the Gates reports to the prosecutors. *See* Clerk's No. 291 at 3–7.

3. Although a fine line, there is a material difference between Defendants' claim that Larsen and Brown indisputably disclosed the Gates reports to prosecutors and the Court's recognition in prior Orders that the prosecutors undoubtedly had knowledge of the Gates reports. *See McGhee*, 475 F.Supp.2d at 913.

the pleadings that did not ultimately adjudicate all claims in the case. *See* Fed. R.Civ.P. 54(b) (providing that in such an instance, "any order or other decision . . . may be revised at any time"). Moreover, Defendants concede that the law of the case doctrine is "a doctrine of discretion, not a command to the courts." *See* Defs.' Br. at 5 n. 4 (citing *Harrington,* 670 F.Supp.2d at 966).

■ Third, the proposed facts are neither irrelevant to the Plaintiffs' remaining claims against the Defendants nor are they unfairly prejudicial to Defendants. Plaintiffs have asserted that the Defendants, along with the Pottawattamie County prosecutors, engaged in a conspiracy to deprive the Plaintiffs of their constitutional rights. Although various overt acts are alleged in furtherance of this conspiracy, it is indisputable that when the case against Plaintiffs culminated in trial, the material, exculpatory Gates reports were not provided to Plaintiffs. A reasonable jury could conclude that this failure was but one small part of an overarching conspiracy to intentionally deprive Plaintiffs of due process, equal protection, and ultimately of a fair trial. *See Villasana v. Wilhoit,* 368 F.3d 976, 980–81 (8th Cir.2004) (stating that § 1983 damages can be recovered against a non-prosecutor for actions intended to deprive a defendant of a fair trial). Indeed, the mere fact that Defendants may be immune from liability specifically for withholding *Brady* evidence from Plaintiffs or from lying about the existence of such evidence during trial does not mean that evidence regarding the fact of the *Brady* violation is inadmissible for all purposes. Thus, Defendants' protestations that admission of this evidence would deprive them of the benefits of their qualified immunity is simply without merit.

Finally, the Court notes that *who* violated *Brady* is irrelevant for purposes of the present motion. Even accepting as true that the prosecutors were aware of the undisclosed Gates reports, the Court would still find it proper to take judicial notice of the materiality of the reports and the fact that Harrington and McGhee did not know about them when they stood trial in 1978. Even beyond the fact that Plaintiffs have alleged a conspiracy, the fact of the *Brady* violations is relevant to how Plaintiffs got out of prison, and to ensure that the jury has a complete story of the events giving rise to Plaintiff's incarceration and present claims.[4]

### B. *Non-disclosure of the Gates Reports*

Plaintiffs petition the Court "to find that evidence of how the non-disclosure of the Gates reports occurred in 1978 is admissible at . . . trial." Clerk's No. 272–1 at 1. In resisting the Motion, Defendants argue that the doctrines of the law of the case and qualified immunity bar the evidence at issue. *See* Clerk's No. 291 at 8–14. Specifically, Defendants assert, as they did with respect to the prior Motion, that "this Court ha[s] already held that Defendants (Larsen and Brown) indisputably disclosed all exculpatory evidence to the former County Attorney Defendants, including the purportedly missing reports regarding Charles Gates." *Id.* at 9 (citing *McGhee v. Pottawattamie County,* 475 F.Supp.2d 862, 913 (S.D.Iowa 2007)). Since the Court has already made this determination, Defendants argue, it is now the law of the case. *See id.* Defendants also contend that "[p]resenting [the evidence at issue] . . . to a jury would . . . impermissibly force

***

4. This Order cannot, and should not, be read to suggest that Defendants failed to disclose the Gates reports. Indeed, Plaintiffs acknowledge that this issue is outside the scope of the Motion. *See* Clerk's No. 271–1 at 3 ("There may be a dispute as to how the failure to disclose occurred.").

[them] to stand trial on claims for which they are immune." *Id.* at 14 (citing *McGhee*, 475 F.Supp.2d at 913).

 The Court addressed both Defendants' law of the case and immunity arguments in ruling on the prior Motion for judicial notice. Thus, at this juncture, the Court believes that Plaintiffs generally are free to present evidence regarding how the alleged nondisclosures occurred, at least to the extent that such evidence is consistent with their conspiracy claims. More specifically, the Court emphasizes that the evidence would not be permissible to show that the *Brady* violations themselves violated any particular constitutional right of Plaintiffs, because Defendants are immune from such a claim. However, Plaintiffs should be permitted to offer the fact of the violations and evidence as to how the violations occurred as support for their claim that Defendants conspired with prosecutors to intentionally deprive Plaintiffs of due process, equal protection, and fair trials.[5] Because the Court is uncertain as to precisely *what* evidence Plaintiff intends to offer on this issue, Defendants remain free to lodge any pertinent objections during the course of Plaintiffs' presentation of evidence. Moreover, to the extent that Defendants would seek a limiting instruction to ensure that their immunity on the related *Brady* violation itself is protected, the Court will entertain any reasonable proposal.

### C. *How Plaintiffs Obtained Release From Prison*

 The parties agree that the jury should be instructed on how McGhee and Harrington were released from prison. *See* Clerk's No. 275–1 at 1–2; Clerk's No. 291 at 25. They, however, disagree on the contents of the jury instruction. *Compare* Clerk's No. 275–1 at 2–3 (Plaintiffs' proposed instruction) *with* Clerk's No. 291 at 26–27 (Defendants' own proposed instruction and criticism of Plaintiffs' proposed instruction). The Court finds neither version appropriate and concludes that the following jury instruction will sufficiently inform the jury on the issue without prejudicing the interests of either party:

> In 2003, the Iowa Supreme Court vacated Terry Harrington's 1978 murder conviction after finding that certain police reports concerning an alternative suspect in the Schweer murder were not disclosed to Harrington prior to his trial. In the same year and for the same reason, Curtis McGhee's 1978 murder conviction was also vacated. Both men were released from prison in 2003 and no further charges against them have been pursued.

### II. CONCLUSION

For the reasons above, Plaintiff's Motions (Clerk's Nos. 271, 272, 275) are GRANTED, to the extent articulated in this Order.

IT IS SO ORDERED.

---

**5.** This is wholly consistent with the Court's prior observation that:

> Plaintiffs have adequately alleged that Larsen and Brown actively coerced and coached witness testimony for the purpose of arresting them without due process and *for the purpose of denying them their rights to a fair trial.* The allegations are sufficiently conscience-shocking to state a substantive due process violation that was clearly established at the time the alleged violation occurred.

*McGhee,* 475 F.Supp.2d at 913 (emphasis added).